## State *versus* William Mayberry *& al.*

A conspiracy is a combination of two or more persons, by concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means.

When the act to be accomplished is in itself criminal or unlawful, it is not necessary to set out in the indictment the means by which it is to be accomplished.

When the act is not in itself criminal or unlawful, the unlawful means by which it is to be accomplished must be distinctly set out.

Inasmuch as cheating and defrauding a person of his property are not necessarily criminal at common law, an indictment, charging a conspiracy to cheat and defraud, must contain averments setting out the unlawful means by which the object was to be accomplished.

Crimes referred to in our statutes, as punishable in the state prison, include not only those which *must* be, but also those which are *liable* to be, thus punished.

An indictment, alleging in distinct terms that the defendants conspired to cheat and defraud a person named; that to accomplish that object they made certain representations which are distinctly and formally set out; that these representations were false and fraudulent, and well known by the defendants so to be, and that they were made for the purpose of cheating and defrauding that person, charges a conspiracy, within the strictest definition of the term.

An immaterial averment in an indictment, not contradicting any other averment, not descriptive of the identity of the charge, or of any thing essential to it, nor tending to show that no offence has been committed, may be rejected as surplusage.

State *v.* Mayberry.

Matters of *inducement* need not be set out in an indictment, with that degree of minuteness and particularity, which is requisite in setting out the material allegations, which constitute or give character to the offence charged.

An indictment, alleging that the respondents unlawfully, &c., did conspire, combine, confederate and agree together, one H. P. to cheat and defraud, "by then and there inducing and procuring said H. P. to surrender" certain notes, describes the manner in which they agreed to cheat H. P., and does not make a new substantive charge.

If conspirators carry out or attempt to carry out the object of the conspiracy, that fact may be alleged in aggravation of the offence, and given in evidence to prove the conspiracy.

A conspiracy to commit a higher offence merges in that offence, if committed; but in case of a conspiracy to commit a crime of the same grade, there is no merger.

A conspiracy to cheat by false pretences is not merged, though the object of the conspiracy is accomplished.

One good count in an indictment is sufficient to support a general verdict of guilty, though it may also contain defective counts.

The rule, that a party cannot give secondary evidence of the contents of papers in the possession of the other party, unless he has given seasonable notice for the production of the papers at the trial, does not apply to cases in which the opposite party must know, from the nature of the suit or prosecution, that he is charged with the fraudulent possession of the papers.

Exceptions to the refusal of the presiding Judge to instruct the jury in a criminal case, that the respondents cannot be convicted upon a certain count in the indictment, in consequence of the omission therein of their addition and residence, will be overruled, if it does not appear that the respondents were prejudiced by that omission.

Requests for instructions to the jury, upon matters of fact, are rightly denied.

If two persons conspire together to alter a deed, and thereby to cheat and defraud another of valuable papers, by obtaining them of him for the altered deed, by false pretences, and do obtain the papers by the false pretences, the fact, that the alteration so made by them, supposing it to be material, was in fact not material, does not entitle them to an acquittal upon an indictment for the conspiracy.

ON EXCEPTIONS to the rulings and instructions of DAVIS, J. There was a motion in arrest of judgment which was over-ruled *pro forma,* by the presiding Judge. Also a motion to set aside the verdict as being against the evidence.

This was an indictment for conspiracy, and contained four counts, the first two of which are as follows:—

"State of Maine.—Cumberland, ss.—At the Supreme Judicial Court, begun and holden at Portland, within and for the

county of Cumberland, on the last Tuesday of November, in the year of our Lord one thousand eight hundred and fifty-eight : —

"The jurors for said State upon their oath present, that William Mayberry and Stephen P. Mayberry, both of Cape Elizabeth, in the county of Cumberland, laborers, on the twenty-ninth day of June, in the year of our Lord one thousand eight hundred and fifty-eight, at Cape Elizabeth, in said county of Cumberland, did together unlawfully combine, conspire, confederate and agree fraudulently, falsely, maliciously and unlawfully to cheat and defraud one Henry Pennell, of certain valuable papers, instruments, and documents, to wit : of a certain bond or writing obligatory, whereby the said William Mayberry acknowledged himself indebted to the said Henry Pennell in the sum of eighteen hundred dollars, said writing obligatory or bond being then and there signed with the signature and sealed with the seal of him, the said William Mayberry, and also of three promissory notes, each signed with the signature and name of him, the said William Mayberry, the tenor of which said notes is to the jurors unknown, and the said bond or writing obligatory, and the said promissory notes, being all and singular, then and there in full force and not paid, cancelled nor revoked, and, being then and there the property of him, the said Henry Pennell, and then and there being of the value of one thousand dollars ; by then and there falsely and fraudulently pretending to him, the said Henry Pennell, that the said William Mayberry was then and there the owner of certain lands and tenements, situated in Gray, in said county, and that the said William Mayberry then and there had good right, then and there to sell and convey to him, the said Henry Pennell, the said certain lands and tenements ; whereas, in truth and in fact, they, the said William Mayberry and Stephen P. Mayberry, then and there well knew that he, the said William Mayberry did not then and there own such lands or tenements in Gray aforesaid, and they, the said William Mayberry and Stephen P. Mayberry, then and there well knew that the said pretence that he, the said Wil-

liam, was the owner, as aforesaid, of such lands and tenements in Gray, was then and there untrue, false and fraudulent, against the peace of the State, and contrary to the form of the statute in such case made and provided.

" And the jurors aforesaid, upon their oath aforesaid, do further present, that the said William Mayberry and Stephen P. Mayberry, at Cape Elizabeth aforesaid, in the county aforesaid, on the twenty-ninth day of June, in the year of our Lord one thousand eight hundred and fifty-eight, unlawfully, fraudulently and maliciously, did conspire, combine, confederate and agree together, one Henry Pennell to cheat and defraud, by then and there inducing and procuring him, the said Henry Pennell, a certain bond, or writing obligatory, signed with the signature and name and sealed with the seal of him, the said William Mayberry, whereby he, the said William Mayberry, acknowledged himself to be indebted to the said Pennell in the sum of eighteen hundred dollars, and also three certain promissory notes, each and all signed with the signature and name of him, the said William Mayberry, the tenor of which said promissory notes is to the jurors unknown, which said bond or writing obligatory, and promissory notes, were then and there the property of him, the said Henry Pennell, and were then and there of great value, to wit: — of the value of one thousand dollars, and were then and there, all and singular, in full force, and not revoked, cancelled nor paid, to surrender, cancel and discharge, under and by means of the false and fraudulent pretence, that he, the said William Mayberry, was then and there seized and possessed of a certain parcel of land, with the buildings thereon, situated in Gray, in said county of Cumberland, and that he had good right then and there to sell and convey the said land and buildings to him, the said Henry Pennell, and that he, the said William Mayberry, would then and there, for the consideration of the surrender, cancellation and discharge of the bond or writing obligatory aforesaid, and of the three promissory notes aforesaid, so as aforesaid held against him by the said Pennell, sell and convey the land and buildings aforesaid, in

Gray aforesaid, to him, the said Henry Pennell; when, in truth and in fact, he, the said William Mayberry, was not then and there seized and possessed, as aforesaid, of such lands or tenements in said Gray, and they, the said William and Stephen P. Mayberry, then and there well knew that he,.the said William was not then and there seized and possessed of such lands or tenements in said Gray, and that he, the said William,.then and there had not good right then and there to sell and convey to him, the said Henry Pennell, the said lands or tenements situated in Gray aforesaid.

"But they, the said William Mayberry and Stephen P. Mayberry, then and there well knew that he, the said William Mayberry, had before that time, to wit, on the seventh day of June, in the year of our Lord one thousand eight hundred and fifty-eight, by deed of that date, sold and conveyed to one John Lawrence, of Westbrook, in said county of Cumberland, all the real estate that he, the said William, owned in the town of Gray aforesaid.

" And then and there knowing, as aforesaid, the falsity and fraud of all and singular the aforesaid pretences, they, the said William Mayberry and Stephen P. Mayberry, then and there, as aforesaid; unlawfully, fraudulently and maliciously, did conspire, combine, confederate and agree together, him, the said Henry Pennell, then and there, as aforesaid, by the false and fraudulent pretences aforesaid, to defraud and cheat, against the peace of the State and contrary to the form of the statute in such case made and provided."

The respondents were duly arraigned and pleaded "not guilty."

The government introduced the following testimony.

*Henry Pennell.*—In February, 1838, I bought my house of E. F. Beale, of Norway. He required good personal security, and agreed to take the notes of William Mayberry without a mortgage. The first payable in June, then next, the second, in one year from that June, and the third, in two years from that June.

I informed said Mayberry as to the bargain I could make,

and he agreed to give his notes, and take a deed from Beale of the property, and give me his bond to convey the same to me, upon my paying the notes to Beale. On the 26th of Feb., 1838, the writings were made.

[The defendants' counsel objected to proving the contents of any of these writings, and also seasonably objected to the oral proof, because the bargain was reduced to writing, and because no notice had been given to defendants, or either of them, or their counsel, to produce them, or any of them. But the witness testified further, that the notes given by William Mayberry to Beale, and the bond given by William Mayberry to him (the witness) were delivered by him (the witness) to Stephen P. Mayberry, in June last, for his father, William Mayberry, and that he (the witness) had since made a demand for them of said William Mayberry. And the presiding Judge, being satisfied that said bond and notes were in the hands of the defendants, ruled, that the allegation in the indictment, that they had obtained them from the witness by false pretences, was sufficient notice to them to produce them at the trial; and that, unless they would produce them, the witness might testify as to their contents.]

The witness thereupon testified further as follows:—

I cannot state all the contents of the bond. It was in the penal sum of $1800, and the condition of the bond was, that if I would pay and take up these notes of $1000, and deliver them to him, he would give me a good deed of the property. Said William Mayberry gave Beale three notes, amounting to $1000, payable as before stated. The bond described the said property where I now live, and recited that it had been conveyed to said Mayberry by said Beale, and was the same property described in that deed.

I paid the three notes, at or about the time they fell due, attached them to the bond, and kept them until I delivered them to said Stephen P. Mayberry.

In April, 1858, I took the bonds and notes, called upon William Mayberry, and requested a deed of my property. He denied the whole transaction. I said, if you will stop a

few moments, I will show you what I have got. I then showed him the papers, he hesitated, but finally admitted their correctness, and said, I shall be over soon and will see about it. I waited two or three weeks, and he did not come. I then went over to Cape Elizabeth where he lived, and saw him. He said, I am very busy planting and sowing, and I will be in the city in a few days and will fix up that business—he did'nt come. As the period of twenty years from their date had almost expired, I went to the Register of Deeds—had him make out a warranty deed of the property, and I either carried the deed over to him, or gave it to him, or to his son. He did'nt come over with the deed. I should think I waited three weeks—and then went to him again. He then said, I will not give you a warranty deed of this property, I have concluded not to give you any thing but a quitclaim. I told him I would come over and consult Mr. Fox. I did so, and got Mr. Fox to make a quitclaim of the property from Mr. Mayberry to me. He did'nt sign that. I told him the business had got to be settled up. I had the deed made and showed it to him, and he refused to sign it. Both of the defendants came to my office, and we talked about one half an hour. I wanted William to sign it, and, after consulting Fox, he consented. I then asked him to go to Fox's office and get Fox to acknowledge the deed. His son, Stephen P. Mayberry, spoke up, and said, we have a justice at Cape Elizabeth, who does our business. I delivered it to him, and he carried it out of the office. I afterwards came to my office, and found a note there from Stephen P. Mayberry.

Witness here produced the note, and stated that it was in the handwriting of Stephen P. Mayberry, as follows:—.

"Mr. Pennell, Come over at 2 1-2 o'clock. I have to get mother to sign—to our house."

(Signed,)                    " Stephen P. Mayberry."

About one half an hour afterwards, I saw Stephen, and he said, we are going away, and would rather you would not come till to-night. I told him I would rather come over

in the afternoon, and that he could leave the deed to be exchanged. He said he should not trust it to anybody. I went over after tea, which I took at six o'clock. S. P. Mayberry was at the barn. I said, I have brought over the bond and notes, and we'll shift them. We went into the house, and he passed me the deed, and I passed him the bond and notes. I looked at it, and he said, we want this bond cancelled. He wrote a cancel on the bond, and I signed it, without reading it, and came home.

The next day I handed the deed to the register to be recorded. This is the deed.

I saw the deed before, and this is the same deed, with the exception of the word " not" after the word " meaning," and also excepting the signatures of Mayberry and wife, the witness and magistrate, and date of acknowledgment. It had been altered, after I gave it to Mayberry, by inserting the word " not" after " meaning."

After I discovered the alteration, I went over, with young Mr. Fox, and found Stephen P. Mayberry in the garden. Mr. Fox asked him where his father was—he said, in the house— he asked him to speak to him to come out, that he wished to see him. He went into the house, was gone about five minutes and came out, and hallooed for his father. He said his father was up in the pasture catching horses. We went into the pasture and did'nt find him. We went back to the house and could not get in—knocked, and no one came to the door —the door was fastened—we then came over to Portland.

Fox and I went over again that evening—drove up—Fox knocked—a girl came to the door. Fox asked where Mr. Mayberry was—she said, in bed. Fox said, we wish to see him. She lighted us into the room where he was in bed. Fox then tendered back that deed. He said, you have been committing a gross fraud on Mr. Pennell in this deed, in altering it, and I tender it back to you. We stopped a spell. I don't remember Mayberry's answer. He said but very little. Fox made a demand for the bond and notes—Mayberry

denied that he had seen them—he said he hadn't them—hadn't seen them.

The evening the deed was given to me by Mayberry, I did not read it. I carried it to the register's office next morning. I did not know of the alteration until my attention was called to it by the register, a day or two afterwards.

*Mr. Gerrish,* the register of deeds, being called, testified that no one had access to the deed after Pennell left it with him; and, when he recorded it a few days afterwards, he noticed the alteration, and called Pennell's attention to it.

*Frederick Fox.*—The deed (the one containing the alleged alteration) is in my handwriting—prepared at Mr. Pennell's request. I delivered it to my brother, Edward Fox, or to Mr. Pennell. When I delivered it, it was the same as now, excepting the word "not" after the word "meaning"—the date of the acknowledgment—and the signatures of the grantors, witness and justice.

I went over to William Mayberry's with Mr. Pennell, and tendered this deed, and demanded the bond and notes.

I told him the deed had been altered. He asked in what, and I explained to him. He was in bed. He said he would see Mr. Pennell and make it right.

*E. F. Beale.*—Stephen P. Mayberry met me since this indictment, and asked me a question:—question relating to the payment of the notes—was like this,—Do you recollect that Mayberry paid those notes for Pennell? My reply was, that Mr. Pennell paid the notes—that was all.

*John Lawrence.*—I have no deed from William Mayberry of the premises in question—never received any such deed. Such a deed was made by Mayberry and recorded. It was never delivered to me, or to any one for me, by my authority. Stephen P. Mayberry has since requested me to convey the premises to another person.

The question, whether the witness had made such a conveyance, was objected to and excluded.

*Edward Fox.*—Have been counsel for William Mayberry

in some cases, and am now, in one case. Was consulted by Pennell. I read the alleged altered deed, before it was executed to Mr. Pennell, and, I believe, handed it to him. The word "not" was not in the deed when I handed it to Mr. Pennell.

After Pennell had received the deed, S. P. Mayberry came to me, and said, they declined to execute it without some explanations. He said his father would not or should not sign it. He objected, because the deed said his father had received a consideration of $1800, when he had not, and because certain printed words were erased. I explained about the consideration, and stated the reason for erasing the words was, that the covenants of warranty in the deed might avail against his father, in case of any attachment, or prior conveyance by his father.

He finally said, his father should or would sign it. He said they had a justice, and he would prefer to have him go before him.

His father was not present. Stephen very frequently attended to his father's business.

The Government also put in the deed spoken of by Henry Pennell in his testimony.—

"Know all Men by these Presents, That William Mayberry of Cape Elizabeth, in the county of Cumberland, in consideration of eighteen hundred dollars, paid by Henry Pennell of Gray, in said county, the receipt whereof I do hereby acknowledge, do hereby remise, release, bargain, sell and convey, and forever quitclaim unto the said Henry Pennell, his heirs and assigns forever, the following described piece or parcel of real estate situated in Gray, near the corner, bounded as follows:—Beginning on the south-east side line of the county road leading from Gray Corner to New Gloucester, at the corner of land formerly owned by Charles Barrell, and bounded by the said Barrell land on the south-west side and by land formerly owned by Jonathan McKenney on the south-east and north-east, and the county road on the other side,

containing one acre, together with the buildings thereon, meaning not to convey the same estate with the privileges which was conveyed to me by E. F. Beal by deed of February 26, 1838, recorded vol. 156, p. 364, of Cumberland Records, reference being had to the same for a more particular description of said premises.

"To have and to hold, the same, together with all the privileges and appurtenances thereunto belonging, to him, the said Henry Pennell, his heirs and assigns forever. And I do covenant with the said Henry Pennell, his heirs and assigns, that I will warrant and forever defend the premises, to him, the said Henry Pennell, his heirs and assigns forever, against the lawful claims and demands of all persons claiming by, through, or under me.

"In witness whereof, I, the said William Mayberry, and Jane Mayberry, wife of said William, in token of her relinquishment of her right of dower in said premises, have hereunto set our hands and seals this twenty-ninth day of June in the year of our Lord one thousand eight hundred and fifty-eight.

"Signed, sealed and delivered in presence of Joseph Reed.
"William Mayberry. [L. s.]
"Jane Mayberry." [L. s.]

"State of Maine. — Cumberland, ss. June 29th, 1858. — Personally appeared the above-named William Mayberry, and acknowledged the above instrument to be his free act and deed. Before me,
"Joseph Reed, *Justice of the Peace.*"

No witnesses were called in defence. Upon this evidence the counsel for the respondents presented to the presiding Judge requests for certain instructions, part of which were given, and a part refused. Those given are immaterial, so far as relates to the questions of law raised. Those which were refused wholly or in part are the following : —

4th. That, inasmuch as it is alleged in the *third* count, that the object for which the conspiracy is alleged to have been

formed was accomplished, the respondents are entitled to their verdict upon *that* count.

5th. That, inasmuch as it is not alleged in the *third* count, that the William Mayberry and Stephen P. Mayberry therein named, are the same persons previously named in the indictment—nor that they are of Cape Elizabeth, the respondents cannot be convicted upon *that* count.

6th. That the respondents are entitled to a verdict of acquittal, because the alleged fraud and deception are not such that common prudence and care could not guard against them—nor such as could not have been detected by ocular inspection.

9th. That as to the *third* count, the following, among other allegations, must have been proved, or the respondents be acquitted as to *that* count; viz., that the alleged bond was one whereby William Mayberry acknowledged himself to be indebted to the said Henry Pennell in the sum of eighteen hundred dollars; and that it was signed with the signature, and sealed with the seal of the said William Mayberry; that the three notes described in said count were each signed with the signature and name of said William Mayberry, and in full force and not paid at the time of the alleged conspiracy; and that the insertion of the word "not," as alleged in the said count, was a material alteration of the deed, destroying the whole meaning and effect of the said clause and of the deed.

10th. That there is no evidence whatever in the case of such bond, as is described in said count; no evidence that said notes were each signed with the signature and name of said William Mayberry; no evidence that they were in full force and not paid, but had been paid, at the time of the alleged conspiracy, and so the respondents are entitled to a verdict of not guilty under this count.

The fourth request was not granted; but the presiding Judge instructed the jury that, though the object of the conspiracy was alleged to have been accomplished; yet, if they should find that in fact it was not accomplished, then the conspiracy was not merged, and the defendants would not,

for that reason, be entitled to an acquittal upon the third count, the allegation that it was accomplished being unnecessary and immaterial.

The fifth request was denied, the presiding Judge saying thereupon that such objection to the indictment, not having been taken before pleading to the merits, could not now be raised before the jury; but that, if the omission to insert in the indictment the name of the town of the residence of the defendants tended to their prejudice, they would have their remedy upon a motion in arrest of judgment.

The sixth request was denied.

The ninth request was granted in part, and in part refused.

The jury were instructed that every thing in the count descriptive of the bond and notes must be proved as alleged; that all the allegations in regard to the signing, sealing, signature, and amount of the bond or notes, were material, and must be proved as stated; but that the allegation that the notes, at the time of the conspiracy, were in full force and not paid, was not descriptive of the notes, and was not material; but that, if the defendants conspired, as alleged in said count, to obtain such a bond and such notes as are therein described, and if said bond was then in force, and Pennell then held said notes as vouchers and evidences that he had paid them and taken them up, so as to secure his rights under the bond, the fact that the notes had been so paid, and were not, as such, in force, would not entitle the defendants to an acquittal.

In regard to the remainder of this request, the jury were instructed that the word "not," if inserted in the deed by defendants, as alleged, was repugnant and void, and therefore immaterial; but that, if the defendants conspired together so to alter said deed, and thereby to cheat and defraud said Pennell of the bond and notes, by obtaining them of him for the deed so altered, by false pretences, as alleged in said count, and did so obtain said bond and notes by false pretences, as alleged in said count, then the fact that the defendants failed of their ultimate purpose because the alteration

so made by them, supposing it to be material, was, in fact, not material, would not entitle them to an acquittal.

The tenth request was denied, the jury being instructed that, so far as the allegations were material, it was for them to say whether the facts were proved.

Other instructions were given, such as the case required, to which no exceptions were taken.

The jury returned a general verdict of guilty.

To these instructions, refusals to instruct, and to the admission of parol evidence of the contents of the bond and notes, as stated in the report of the evidence, the defendants excepted.

*John S. Abbott,* for the respondents.

I. Motion in arrest of judgment.

1. The first count is defective. There is no sufficient description of Henry Pennell—"one Henry Pennell." The writing is stated in the alternative, "bond or writing obligatory," and the description of it does not conform to the name given it. The description of the false pretences is too uncertain and vague.

It is not alleged in this count that William Mayberry offered to sell and convey the land in Gray to Pennell, nor that he designed to, nor that there was any purpose on the part of either of them that Pennell should receive a conveyance of them.

There is no allegation that William Mayberry had not then and there good right to sell and convey to Pennell the said land.

If *not the owner,* and he had good right to sell and convey the same to Pennell, it would be all the same.

2. The *second* count has the same uncertainty as to the description of Pennell, of the writing obligatory, and of the land in Gray.

This count is further defective, in this:—It commences with a charge of conspiracy, but, instead of alleging such a crime, it undertakes to allege the actual procuring of the

papers. They unlawfully conspired to cheat, by then and there cheating.

It is necessary to charge distinctly the acts done, which are considered to constitute the *conspiracy.* Conspiring to do an act is one crime — the doing it another.

The count is defective also in this:—It is alleged, that the false pretence was, that William Mayberry was then and there seized and possessed of a certain parcel of land, &c., situated in said Gray, and that he had good right then and there to sell and convey the same to said Pennell, and would do so for the consideration of the surrender, &c., of said papers.

It is not alleged, that William Mayberry had not good right then and there to sell the same; nor is it alleged, that William Mayberry did not, in good faith, intend to convey the same, and did in fact convey the same to said Pennell.

It is merely alleged, in substance, that the respondents knew that William Mayberry had no right then and there, on the 29th of June, 1858, to sell certain lands in Gray, because they then well knew that William Mayberry, on the 7th of June, 1858, had sold and conveyed to one Lawrence all the real estate William Mayberry owned in Gray, on the 7th of June, without alleging that he did not afterwards acquire real estate in Gray.

3. The whole indictment charges no crime. Each count undertakes to charge a *statute* offence. The only statute in relation to it is c. 126, § 12 of the Revised Statutes. It can come only under the clause against conspiring "to commit any crime punishable by imprisonment in the state prison."

Crimes "punishable by imprisonment in the state prison," are those which *must* be so punished. They are not those which *may* be punished by imprisonment in the state prison, or by fine.

Cheating by false pretences is not a crime which *must* be punished by imprisonment in the state prison. It may be punished by fine. It does not, therefore, come within the class which is punishable by imprisonment in the state prison.

Hence, a conspiracy to cheat by false pretences is not an indictable offence under the statute.

Again, it does not appear that the act, which it is alleged they conspired to commit, was a crime. It is not every fraud that is punishable criminally. *Commonwealth* v. *Hersey*, 1 Mass., 137; *Commonwealth* v. *Warren*, 6 Mass., 72; *Rex* v. *Pywell*, 1 Stark., 402; 3 Greenl. Ev., 85, §§ 90, 95, 97; 3 Archbold, 618; *State* v. *Roberts & al.*, 34 Maine, 320.

Again, no count in the indictment particularly and fully sets out and describes the means agreed upon by the respondents to be used, and such means as would be calculated to produce the alleged object. *State* v. *Roberts & al.*, 34 Maine, 320; *March* v. *The People*, 7 Barbour, S. C. R., 391.

An indictment for conspiracy to cheat, which does not set forth the means intended to be used, is insufficient, and is not aided by averments of overt acts done in furtherance of the conspiracy. *Commonwealth* v. *Shed*, 7 Cush., 514; *Commonwealth* v. *Hunt & als.*, 4 Met., 111; *Lambert* v. *The People*, 7 Cowen, 166; 9 Cowen, 578; *The People* v. *Eckford*, 7 Cowen, 535.

The next point I make is, that no *crime* was conspired to be committed, or in fact committed. No fraud was perpetrated. No wrong was done Pennell.

The word "not," which is alleged to have been inserted in the deed, is perfectly immaterial, and does not change or affect the meaning of the deed. Mayberry has *in fact* performed his part of the contract, has *in fact* conveyed to Pennell the land agreed to be conveyed, whether he intended it or not, and has received what he was entitled to receive—the bonds and notes.

Again, the indictment alleges, not only the conspiracy, (if it alleges one,) but also the actual accomplishment of the object of the conspiracy. The conspiracy was therefore merged. *Commonwealth* v. *Kingsbury & al.*, 5 Mass., 106.

II. The exceptions.

1. The contents of certain writings were allowed to be proved, against the objections of the counsel for the respond-

ents. Rule 27, 37 Maine, 576, is in point, and is as binding on the Court, as on counsel or parties.

2. The fourth and fifth requested instructions should have been given, for reasons already stated.

3. The tenth should have been given. Where there is no evidence whatever to support a material allegation in the indictment, the Judge may so instruct the jury, without infringing upon their province.

*N. D. Appleton, Attorney General,* for the State.

The opinion of the Court was drawn up by

RICE, J. — This is an indictment for a conspiracy, and contains four counts. The jury rendered a general verdict against both defendants. The case is presented on exceptions, motion in arrest of judgment, and on a motion to set aside the verdict as against law and against the evidence and the weight of the evidence.

On the motion in arrest of judgment, it is contended that each and all the counts are defective and insufficient to support a judgment against the defendants. As to the first count, it is contended by the counsel for the defendants to be insufficient. Such is obviously the case. It is, therefore, dismissed without further notice.

The second count, divested of its formal and technical averments, alleges, " that the defendants, on the twenty-ninth day of June, A. D., 1858, at, &c., unlawfully, fraudulently and maliciously did conspire, combine, confederate and agree together one Henry Pennell to cheat and defraud, by then and there inducing him, the said Henry Pennell, a certain bond and certain promissory notes, signed by William Mayberry, one of the defendants, of the value of one thousand dollars, to surrender, cancel and discharge, under and by means of the false and fraudulent pretence, that the said William Mayberry, was then and there seized and possessed of a certain parcel of land, with the buildings thereon, situated in the town of Gray, &c., and that he, said William

Mayberry, then and there had good right to sell and convey the same to the said Henry Pennell, and that the said William would then and there, in consideration of the surrender, cancellation and discharge of said bond and notes, sell and convey the said land and buildings to said Pennell, when in truth and in fact, the said William Mayberry was not seized and possessed of said lands and tenements in Gray, and had not good right to sell and convey the same to said Pennell, and that the defendants then and there, well knowing the falsity and fraud of all and singular the pretences aforesaid, did unlawfully, fraudulently and maliciously, combine, conspire," &c.

A conspiracy has been well defined to be a combination of two or more persons, by concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means. *Commonwealth* v. *Hunt*, 4 Met., 111.

When the act to be accomplished is itself criminal or unlawful, it is not necessary to set out in the indictment the means by which it is to be accomplished; but, when the act is not in itself criminal or unlawful, the unlawful means by which it is to be accomplished must be distinctly set out.

Cheating and defrauding a person of his property, though never right, was not necessarily an offence at common law. The transaction might be dishonest and immoral, and still not be unlawful in the sense in which that term is used in criminal law. *State* v. *Hewitt*, 31 Maine, 396. Hence, the mere allegation, that the defendants conspired to cheat and defraud Henry Pennell, would not be sufficient. To sustain an indictment for that cause, it must appear, by the averments in the indictment, that the act was to be accomplished by criminal or unlawful means.

Section 12 of c. 126, R. S., provides, that if two or more persons conspire and agree together with the fraudulent and malicious intent wrongfully and wickedly to commit any crime punishable by imprisonment in the state prison, they shall be deemed guilty of a conspiracy.

Section 1, of the same chapter, provides that whoever designedly and by any false pretence or privy or false token, and with intent to defraud, obtains from another any money, goods or other property, or his signature to any written instrument, the false making of which is forgery, shall be punished by imprisonment not more than seven years, or by fine not exceeding five hundred dollars.

All imprisonment in punishment for crime, for a term of one year or more, must be in the state prison, unless otherwise specially provided. R. S., c. 135, § 2.

Crimes referred to in § 12, of c. 126, R. S., as punishable by imprisonment in the state prison, are such as are *liable*, by statute, to be thus punished, and not such only as *must* be thus punished. *Smith* v. *State*, 33 Maine, 48.

The count now under consideration charges, in distinct terms, that the defendants conspired to cheat and defraud Pennell; that, to accomplish that object, they made certain representations, which are distinctly and formally set out, and avers that those representations were false and fraudulent, and well known by the defendants so to be, and that they were made for the purpose of cheating and defrauding Pennell. This would seem to bring the act charged strictly within the definition of a conspiracy.

But, it is contended that the averment of falsity is qualified by subsequent language, wherein it is alleged that the defendants knew that William Mayberry had sold and conveyed to John Lawrence, of Westbrook, all his real estate in Gray, on the 7th day of June, 1858. If the alleged sale to Lawrence were the only averment of the falsity of the defendants' pretences, there would be force in the position, as it would not necessarily follow, because Mayberry had sold all the real estate of which he was possessed in Gray, on the 7th of June, that he was not possessed of, or had not the right to sell, the same or other real estate in that town, on the 29th day of the same June. But, as we have already seen, the count contains other independent, distinct and affirmative averments of the falsity of the pretences made by the defendants.

The alleged sale to Lawrence is therefore wholly immaterial. It does not contradict any averment in the indictment; it is not descriptive of the identity of the charge, or of any thing essential to it; nor does it in any degree tend to show that no offence was committed. It may be rejected, as it is a general rule that whenever an allegation may be wholly struck out of an indictment, without injury to the charge, it may be rejected as surplusage. Chitty's Crim. Law, 294; *Commonwealth* v. *Pray*, 13 Pick., 359.

There are several objections suggested, which are common to all the counts in the indictment, such as the imperfect description of the estate which William Mayberry pretended to own in Gray, and promised to sell and convey to Pennell; the omission to describe Pennell, by addition or otherwise, and the failure to describe the bond and notes, the cancellation of which the defendants conspired to obtain, which alleged defects the counsel for the defendants contends are fatal to the indictment. These several matters are introduced into the indictment by way of inducement. They do not constitute the material allegation in the indictment, and it is not necessary that they should be described with that degree of minuteness and particularity which is requisite in setting out the material allegations which constitute and give character to the offence charged.

It is also contended that this count is defective, inasmuch as it commences with a charge of conspiracy, but, instead of alleging such a crime, it undertakes to allege the actual procuring of the papers—that they unlawfully conspired to cheat by their cheating. On examination, it will be found that the indictment is not open to this objection.

The allegation is, that the defendants, on the twenty-ninth day of June, 1858, unlawfully, fraudulently and maliciously did conspire, combine, confederate and agree together one Henry Pennell to cheat and defraud. That was the object to be accomplished. Now, how was this to be done? What were the means agreed upon by them by which the act was to be accomplished? The indictment answers. It was to

be done by then and there inducing and procuring Pennell to surrender, cancel and discharge his bond and notes under and by reason of the false and fraudulent pretences set out in the count. That was the manner in which they agreed to cheat. Whether they actually succeeded in inducing and procuring Pennell to cancel and surrender the bond and notes or not, is immaterial. The offence charged, consists in conspiring to induce him thus to act, by means of false pretences.

If the conspirators carry out, or attempt to carry out the object of the conspiracy, that fact may be alleged in aggravation of the offence, and given in evidence to prove the conspiracy. *Commonwealth* v. *Tibbetts*, 2 Mass., 536; *State* v. *Murray*, 15 Maine, 100.

There can be no merger in this case. A conspiracy to cheat by false pretences, and actually cheating by false pretences, are offences of like legal turpitude, and punishable in like manner. Both, by our laws are felonies. When there is a conspiracy to commit a higher offence, and the offence is actually committed, the conspiracy is merged; but when both are of the same grade there is no merger. *State* v. *Murray*, 15 Maine, 100; *Commonwealth* v. *O'Brien*, 12 Cush., 84.

The second count being found, on examination, to be good, it is not deemed necessary to examine the two remaining counts in the indictment, for these were substantive offences, and the law is fully settled in this country, that, in a criminal case, one good count is sufficient to support a general verdict of guilty, however defective the others may be. *State* v. *Burke*, 38 Maine, 574. The motion in arrest is, therefore, overruled.

The exceptions. The government was permitted to give in evidence the contents of the bond and notes, described in the indictment, against the objections of the defendant's counsel. No notice had previously been given to the defendants or their counsel to produce said bond or notes, unless the indictment, with a copy of which they had been seasonably furnished, should be deemed such notice.

The 27th Rule of this Court provides that, when written evidence is in the hands of the adverse party, no evidence of its contents will be admitted, unless *previous notice* to produce it on trial shall have been given to such adverse party or his attorney, nor will counsel be permitted to comment upon a refusal to produce such evidence without first proving such notice.

This rule introduces no new principle, but is simply in accordance with, and affirmance of, a well established and generally recognized rule of evidence.

The rule which requires that a party shall have previous notice to produce a written instrument in his possession, before the contents can be proved as evidence in the case, has been made with good reason, in order that the party may not be taken by surprise in cases where it must be uncertain whether such evidence will be brought forward at the trial by the adverse party. But this reason will not apply to cases where, from the nature of the suit, or prosecution, the party must know that he is charged with the possession of the instrument. 1 Phil. Ev., 441; 2 Stark Ev., 361. Thus, in an action of trover for a bond or note, parol evidence of the instrument may be given although no previous notice be proved. *Scott* v. *Jones*, 4 Taunt. 865; *Howe* v. *Hall*, 14 East, 274. So also in a prosecution for stealing such an instrument, the same rule applies. *Rex* v. *Aikles*, 1 Leach, c. 436; *Commonwealth* v. *Messenger*, 1 Bin., 273. Where a party has fraudulently possessed himself of an instrument belonging to the opposite party, notice to produce is unnecessary. *Gray* v. *Kernahan*, 2 Rep. Const. Ct. So. Car., 65.

The defendants were seasonably furnished with a copy of the indictment. They were therein charged with having fraudulently possessed themselves of the papers referred to, and were not, under such circumstances, entitled to further or special notice to produce them.

The fourth requested instruction was properly withheld for reasons already given. The offence of conspiracy was not merged.

The fifth was also rightly refused.  It did not appear that the omission referred to therein tended to prejudice the defendants.

The sixth request was for instructions upon matter of fact, which was for the jury, and not the Court, to determine, and the tenth was of the same character.  They were properly withheld.  So much of the ninth was given as the defendants were entitled to demand.

We are unable to perceive that any instructions were given or any requests to instruct refused, of which the defendants can rightfully complain.

As to the motion to set aside the verdict, on the ground that it is against the evidence and the weight of the evidence, assuming that question to be legitimately before this Court, which, however, may well be doubted, we can only say that the evidence, in our opinion, clearly shows that the defendants deliberately conspired to cheat and defraud Pennell, and to accomplish that act by pretences which they fully believed were false; which the indictment charges were false, and which the jury have found to be false, and, in view of the evidence reported, we cannot say that the verdict is erroneous.  If the defendants failed to accomplish the object for which they conspired, it is manifestly to be attributed to their want of intelligence, rather than to any deficiency of moral turpitude in them.

On the whole, we are of opinion, that the second count of the indictment is sufficient, and that the verdict of the jury is sustained both by law and the evidence in the case.  In this view it becomes unnecessary to examine the third and fourth counts in the indictment.

*Exceptions and motions overruled.*

*Judgment on the verdict.*

TENNEY, C. J., APPLETON, GOODENOW, DAVIS and KENT, JJ., concurred.