WILLIAM BERGER, PLAINTIFF IN ERROR

*vs.*

STATE OF MAINE

Knox.   Opinion, October 8, 1951.

*Christopher S. Roberts,* for plaintiff in error.

*Alexander LaFleur,*
*William H. Niehoff,*
*Daniel McDonald,* for the State.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J.   This is a writ of error that comes to the Law Court from Knox County on report.   The evidence con-

sists of the Superior Court record of the original case in Cumberland County.

This record shows that at the May term of the Superior Court for Cumberland County, 1951, William Berger, this plaintiff in error, was indicted with four others, for a conspiracy. The indictment alleged "felonously did combine, conspire, and agree together, with fraudulent intent wrongfully and wickedly to do a certain illegal act injurious to the public morals, to wit: did then and there conspire and agree together with said intent, wrongfully and wickedly to engage in gambling by then and there agreeing, with said intent, to gamble and bet on horse races."

The respondents, including this plaintiff in error, entered a plea of guilty to this indictment, and each was sentenced to not less than one and not more than two years in the State Prison at Thomaston in Knox County. After notice on this writ of error by a Justice of the Supreme Judicial Court, a hearing was held thereon in Knox County. R. S., (1944), Chap. 116, Sec. 12. The case, by agreement of counsel and by order of court, was reported to the Law Court for determination, under the provisions of R. S., (1944), Chap. 91, Sec. 14.

A writ of error is based on the record facts alone, and lies for defects evident upon the face of the record. It is a writ of right. *Nissenbaum* v. *State*, 135 Me. 393; *Smith, Petitioner*, 142 Me. 1. Even after a plea of guilty the person convicted may have the record reviewed under a writ of error. *Ex parte* Mullen, 146 Me. 191, 79 Atl. (2nd) 173.

A defendant has a constitutional right to know the nature and the cause of the accusation from and by the record itself. The facts must be stated with certainty. The description of the criminal offense charged in the indictment must be full and complete. Every fact or circumstance which is necessary for a *prima facie* case must be stated.

The indictment must charge a crime either under the statute or at common law. An indictment should charge a statutory offense in the words of the statute or in equivalent language. If no crime is charged, no lawful sentence can be imposed. *Smith* v. *Smith,* 145 Me. 313, 75 Atl. (2nd) 538.

The principal assignment of error in this case is that no crime was alleged in the indictment because the indictment "sets forth no conspiracy as defined in Revised Statutes (1944), Chapter 117, Section 25."

Section 3 of Chapter 126 of the Revised Statutes (1944), provides that "whoever gambles, or bets on any person gambling, shall be punished, etc.," and Section 25 of Chapter 117 of the Revised Statutes (1944), relied on by the State, is as follows:

> "If two or more persons conspire and agree together, with the fraudulent or malicious intent wrongfully and wickedly to injure the person, character, business, or property of another; or for one or more of them to sell intoxicating liquor in this state in violation of law to one or more of the others; or to do any illegal act injurious to the public trade, health, morals, police, or administration of public justice; or to commit a crime punishable by imprisonment in the state prison, they are guilty of a conspiracy, and every such offender, and every person convicted of conspiracy at common law, shall be punished by a fine of not more than $1,000, or by imprisonment for not more than 10 years."

The indictment under consideration alleges that this plaintiff in error, with four others, "did combine, conspire and agree together to do a certain illegal act injurious to the public morals," * * * "to wit" * * * "to gamble and bet on horse races." What is or is not injurious to the public morals involves many considerations, and occasionally varies with time and changing conditions. It may depend on the opinion of a majority of good citizens. *State* v. *Jenness,*

143 Me. 380. "The common forms of gambling are comparatively innocuous when placed in contrast with the widespread pestilence of lotteries." *State* v. *Pooler et al.,* 141 Me. 274, 280. At common law, bets were legal under some conditions. 27 Corpus Juris, 1046. The State of Maine recognized this, and early passed a statute against "gaming." Statutes 1821, Chapter 18. Horse racing was decided to be a "game" within its terms. *Ellis* v. *Beale,* 18 Me. 337. However, the State now authorizes, permits, and approves of betting on horse races under regulation and license. Revised Statutes (1944), Chapter 77 and 77-A; Public Laws of 1949, Chapter 289 as amended by Public Laws of 1951, Chapter 404.

The pending indictment does not charge a conspiracy to commit a well defined and well recognized criminal offense. It charges that this plaintiff in error, with others, conspired to "do an illegal act injurious to the public morals" to wit: to engage in gambling, "to gamble and bet on horse races." The words in the indictment are not sufficient to explain the intended act or to negative the fact that the respondents may have lawfully agreed to engage in legal pari-mutuel betting. The manner in which the illegal purpose (if it was illegal) was to be accomplished is not set forth, the purpose itself should appear to have been plainly illegal, and forbidden by law, or the indictment cannot be sustained. The State charged in this indictment that the respondents "wrongfully and wickedly" conspired "to bet on horse races." The indictment does not allege that they illegally conspired. A transaction may even be considered dishonest and immoral according to social standards and still not be unlawful under the criminal law. *State* v. *Hewett,* 31 Me. 396, 399.

Conspiracy has been defined by our court as "a combination of two or more persons, by concerted action, to accomplish some criminal or unlawful purpose, or to accomplish

some purpose not in itself criminal or unlawful, by criminal or unlawful means. When the act to be accomplished is itself criminal or unlawful, it is not necessary to set out in the indictment the means by which it is to be accomplished; but, when the act is not in itself criminal or unlawful, the unlawful means by which it is to be accomplished must be distinctly set out." *State* v. *Mayberry,* 48 Me. 218, 235; *State* v. *Trocchio,* 121 Me. 368, 375; *State* v. *Vermette,* 130 Me. 387. It is not sufficient to say "against the peace of the State and contrary to the form of the statute." *State* v. *Schwarzschild,* 83 Me. 261, 265.

From all that appears by this indictment, now under consideration, there was no illegal purpose. No illegal purpose is alleged. If the purpose was to engage in the legal betting on horse races, and there were unlawful means by which it was to be accomplished, the means are not set out. That the act of betting is in itself wrongful or wicked may depend on the individual idea of public morals. The State, through its legislature, has decided that pari-mutuel betting on horse races is neither wrong nor wicked.

As was said by Justice Merrill in *Smith* v. *State,* "as the indictment does not sufficiently set forth the commission of any offense either under the statutes of this State or at common law, the sentence imposed is entirely without legal justification and is void." *Smith* v. *State,* 145 Me. 313, 75 Atl. (2nd) 538, 545. The writ of error should be sustained, the conviction reversed, and the sentence vacated.

*Case remanded.*