**STATE of Maine**

v.

**Timothy JAMES and Joseph Fenton.**

Supreme Judicial Court of Maine.

Oct. 17, 1973.

Henry N. Berry, III, County Atty., William Gore, Legal Counsel, Portland Police Dept., Portland, for plaintiff:

Berman, Berman & Simmons, P. A. by Jack H. Simmons, Robert A. Laskoff, Lewiston, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

The defendants were indicted for an alleged violation of 17 M.R.S.A. § 951,[1] the indictment charging:

"That on or about the 21st day of April, 1972, and continuously thereafter,

1. "If 2 or more persons conspire and agree together, with the fraudulent or malicious intent wrongfully and wickedly to injure the person, character, business or property

in the City of Portland, County of Cumberland and State of Maine, the above named defendants JOSEPH FENTON and TIMOTHY JAMES *did conspire and agree together to commit the crime of intent to extort* by demanding from one John L. Dixon the sum of Four Hundred Dollars ($400), to be paid to the said defendants JOSEPH FENTON and TIMOTHY JAMES to prevent injury to the property of said John L. Dixon or his partner and/or associate Donald W. Cook, said crime being punishable by imprisonment in the State Prison. In effecting this conspiracy the said defendants JOSEPH FENTON and TIMOTHY JAMES did on or about the 21st day of April, 1972 together assure that no further damage by fire of the type and origin the said defendants together did describe to the said John L. Dixon would occur if the said John L. Dixon would pay to the said defendants the sum of Four Hundred Dollars ($400). In furtherance of the conspiracy the said defendants JOSEPH FENTON and TIMOTHY JAMES did together return to the premises occupied by the said John L. Dixon at 1135 Forest Avenue in said Portland, and when the said John L. Dixon refused to deliver the sum of Four Hundred Dollars ($400) to the said defendants, the said defendants did utter a threat, to wit: the said TIMOTHY JAMES spoke to the said JOSEPH FENTON the following words: 'It looks like he wants to learn the hard way.' In furtherance of the conspiracy the said defendants JOSEPH FENTON and TIMOTHY JAMES together did, on the 3rd day of May, 1972, accept from the said John L. Dixon the sum of Three Hundred Dollars ($300)." (Emphasis supplied.)

The crime of "Intent to extort" is defined by 17 M.R.S.A. § 3702 in this language:

"Whoever, verbally or by written or printed communication, maliciously threatens to accuse another of a crime or offense, or to injure his person or property, with intent thereby to extort money or to procure any advantage from him, or to compel him to do any act against his will, when such offense is of a high and aggravated nature, shall be deemed guilty of a felony and on conviction thereof shall be punished by a fine of not more than $500 or by imprisonment for not more than 2 years; but when such offense is not of a high and aggravated nature, shall be deemed guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $100 or by imprisonment for not more than 11 months."

The defendants seasonably filed a motion to dismiss the indictment, which was granted and from which ruling the state has appealed.[2] We deny the appeal.

▬▬ Indictments which charge a conspiracy to commit a crime punishable in the Maine State Prison[3] must be drafted in accordance with those principles of criminal pleading so well defined in State v. Chick, 263 A.2d 71, 76 (Me.1970), namely:

"This Court has stated that, in conspiracy cases, if the deed to be accom-

---

of another; or for one or more of them to sell intoxicating liquor in this State in violation of law to one or more of the others; or to do any illegal act injurious to the public trade, health, morals, police or administration of public justice; or to commit a crime punishable by imprisonment in the State Prison, they are guilty of a conspiracy. Every such offender and every person convicted of conspiracy at common law shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 10 years." 17 M.R.S.A. § 951.

2. 15 M.R.S.A. § 2115–A authorizes an appeal by the state, inter alia, from an "order or judgment . . . allowing a motion to dismiss an indictment . . . ."

3. "The term 'felony' includes every offense punishable by imprisonment in the State Prison." 15 M.R.S.A. § 451.

plished or purpose to be promoted by the confederacy is in itself criminal or unlawful in that it is descriptive of a well defined and well recognized criminal offense, the nature of which is perfectly understood by the name by which it is designated such as murder, robbery or rape, no further description of the intended crime need be made and the particular means to be used in the commission of the intended criminal offense need not be set out in the indictment. State v. Bartlett, 1849, 30 Me. 132; State v. Ripley, 1850, 31 Me. 386. When the means, by which the object of the conspiracy is to be accomplished are not set forth in the indictment as in the instant case, the purpose itself should appear to be unequivocally illegal and forbidden by law, or the indictment cannot be sustained. The charge must, in the totality of its averments, point up the criminality of the purpose underlying the conspiracy, and when the intended object of the unlawful combine as described does not appear to be in and of itself criminal or unlawful, *then the particular unlawful means upon which the plotted activity rests must be distinctly set out therein.* Berger v. State, [147 Me. 111, 83 A.2d 571]; State v. Hewett, 1850, 31 Me. 396." (Emphasis supplied.)

Although the State has alleged other reasons in support of its appeal, we may limit our decision by testing this indictment against the pleading standards above quoted. If the indictment before us does not meet these standards, we need inquire no further to deny the appeal.

In *Chick* the indictment was found defective because the general language used was "couched only in the general terms of the statute[s]" and lacked factual specifications. The first sentence of the indictment before us falls clearly within this rule since the language of 17 M.R.S.A. § 3702 is not in itself descriptive of any well recognized criminal offense, thus requiring specification of the particular means to be used in the commission of the offense.

The second and third sentences of the indictment were apparently inserted to meet the pleading requirements of *Chick*. We must next inquire whether the facts therein specified "point up the criminality of the purpose underlying the conspiracy." As we read the second sentence it simply asserts that the defendants assured one John L. Dixon that if he would pay $400 to them no further damage by some undescribed type of fire would occur. Whether this damage would be directed at Mr. Dixon's property, real or personal, is left to inference.

The third sentence in the indictment attempts to allege a threat to compel Mr. Dixon to pay the $400, the language being: "It looks like he wants to learn the hard way."

The last sentence of the indictment simply alleges that Mr. Dixon paid $300 to the defendants.

Like the question posed in Berger v. State, 147 Me. 111, 114, 83 A.2d 571, 573 (1951), we must decide whether the words in the indictment before us not only sufficiently explain the acts intended to be done to violate Section 3702, but also negative the fact that the acts alleged may depict lawful conduct.

What the State apparently was *attempting* to say in this indictment is clearly depicted in the colloquy in the record between the Justice below and counsel for the State:

THE COURT: "Now, I think you could have, by innuendo, suggested by the language of your indictment, and I am not ruling, I am just indicating this is how it strikes me. You could have indicated that if the money were not paid the property would be burned, which is what you mean.

[State's Counsel] : *I think that is what the indictment clearly means.*"

■ As we read the language in this particular indictment, the particular means

which the State has alleged constitute a conspiracy to commit a felony are as consistent with lawful conduct as with unlawful conduct. If, in fact, the defendants conspired together to extort $400 from Mr. Dixon by threatening to burn his buildings unlawfully, it would have been a simple matter to so state. Many failures and omissions in the maintenance and care of real property against the threat of fire cause the owners "to learn the hard way" therefrom. The failure to purchase adequate fire insurance, or to install a sprinkler system or to reline defective chimneys, or to have night watchman service, are illustrative. From the facts specified in the indictment we cannot say that the defendants were not trying to convince Mr. Dixon that by the payment of $400 to them his property would be protected from fire by their furnishing any one of the services used in this illustration. Since this attempt to obtain $400 from Mr. Dixon could very well be for a lawful purpose and because the indictment fails to negate such lawful purpose, we must hold the indictment to be fatally defective. State v. Mayberry, 48 Me. 218 (1859). The Justice below ruled correctly.

The entry is

Appeal denied.

POMEROY, J., did not sit.

WEBBER, J., sat at argument but retired before this opinion was rendered.