STATE OF MAINE

*vs.*

STANLEY W. BEANE

Androscoggin.    Opinion, June 11, 1951.

*Irving Isaacson,* for State of Maine.

*Benjamin L. Berman,*
*David V. Berman,* for respondent.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MURCHIE, C. J. When the transcript of testimony in a case carries evidence clearly indicating that the verdict rendered was the only one which could have been returned, if the true issue had been comprehended by the jury, it seems unfortunate to disturb it. Notwithstanding this is such a case, we feel constrained to sustain respondent's Exception X, which challenges the propriety of the refusal of the court below to give certain requested instructions (quoted *infra*) to the jury. We do so to safeguard against the possibility, remote as it appears, that he did not have, in every respect, "a fair and impartial trial." The requirement that every respondent in a criminal case shall have such a trial is fundamental. *State* v. *Merrick,* 19 Me. 398; *State* v. *King,* 123 Me. 256, 122 A. 578; or *State* v. *Brown,* 142 Me. 16, 45 A. (2nd) 442.

In the second of these cases, an exception to the admission of improper testimony was sustained, as this court said, "with reluctance, considering the evidence." It is with great reluctance that we take the action we do. A reading of the evidence supporting the charge that the defendant operated a motor vehicle upon a public highway while under the influence of intoxicating liquor, within the meaning of R. S., 1944, Chap. 19, Sec. 121, produces grave uncertainty if there could have been any reasonable doubt of his guilt, without reference to the testimony to which the requested instructions relate. That concerned a test, made at defendant's request, to determine the alcoholic content of his blood. The instructions given the jury gave unwarranted force to that testimony, which, under the statute, provided *prima facie* evidence of the defendant's guilt.

The statute provides that:

> "Evidence that there was * * * 7/100%, or less, by weight of alcohol in * blood, is prima facie evidence that the defendant was not under the influence of intoxicating liquor* * *. Evidence that there was * * * from 7/100% to 15/100% * * * is relevant evidence * * * not to be given prima facie effect * * *. Evidence that there was * * * 15/100%, or more, * * * is prima facie evidence that the defendant was under the influence of intoxicating liquor * * *."

The defendant's blood, when tested, showed an alcoholic content of 21/100% by weight. The testimony of the pathologist, to that effect, supplemented, and confirmed, evidence of defendant's guilt, given by three police officers who testified on the basis of his appearance and actions and the manner in which he was driving an automobile along the public highway. The defense offered was brief, and in some respects unusual. The defendant did not deny the consumption of alcoholic beverages prior to his arrest, but deposed that he had consumed no more than two bottles of beer, drunk one and three hours, respectively, earlier. He did not deny that his appearance and actions were, substantially, as the officers described them, but ascribed them to a war disability and a highly nervous state resulting therefrom. He explained the course of the automobile as it traveled along the highway by asserting that there was a defect in the steering equipment, which caused the vehicle to "shimmy," as he said, when driven at some speeds.

It is obvious that the evidence of the pathologist made a *prima facie* case against the defendant, under the statute, and that it tended strongly to support what the officers had said and to contradict what he had said, as well as the testimony of a witness presented by him, who was at the police station when he was admitted to bail. This was that the defendant appeared then, as often before, red of face, with eyes "kind of bad."

Despite the apparent strength of the State's case, and the obvious weakness of that of the respondent, the factual issue as to whether he was, at the pertinent time, "at all under the influence of intoxicating liquor," to use the words of the statute, was for jury determination, under our system of jurisprudence. It is unnecessary to cite precedents for a principle of law so fully established, or for the companion one that a jury should perform its allotted function under proper instructions from the court.

The particular issue, in this case, arises in connection with special instructions requested on behalf of the defendant, and refused. Reference to the charge shows that the jury was instructed, thoroughly and appropriately, that the burden of the State was to prove guilt beyond a reasonable doubt, and that the respondent was entitled to the protection of a presumption of innocence. Thereafter, however, the court dealt specifically with the evidence of the pathologist, in two paragraphs, as follows:

> "There is a law in this state which I want to read to you, which has to do with this offence. 'Evidence that there was, at the time, 15/100%, or more, by weight of alcohol in his blood, is prima facie evidence that the defendant was under the influence of intoxicating liquor within the meaning of this section.' Dr. Beliveau has testified, as I understand his testimony, and again I say it is your recollection that controls and not mine, that his test showed 21/100% by weight of alcohol in the blood of this respondent, which, as I figure it, is at least 6/100% more than the 15/100% which the law says shall be prima facie evidence that the respondent in this case was under the influence of intoxicating liquor. Prima facie does not mean conclusive evidence but it means that stands unless successfully contradicted. That is what I take prima facie to mean. It means on the face of it the respondent is considered under the influence of intoxicating liquor.

Much has been said about Dr. Beliveau's testimony as to the test he took, and again you have got to weigh his testimony. Does it sound true? Do you believe the doctor, or is he mistaken or prevaricating about the situation? The doctor is admittedly an eminent pathologist who, as I remember his testimony, has made hundreds of these tests, and who said that the test which he performed in this case was the accepted and recognized test taken from a sample of this respondent's blood. May I say it can only be done at the respondent's request and analyzed. Much has been said in argument about the doctor's failure to observe this respondent. He has had eight hundred cases. His job when called in is to take blood and test that blood and report his findings. He told you what he found and that this was the alcoholic content in the respondent's blood and he said further—Question by Mr. Isaacson: 'Will you explain to the Court and jury what is the significance of that figure .21? My question was what is the significance of that alcoholic content in the blood?' Answer: 'It means that the individual from whom the specimen was obtained was under the influence of liquor at that time.' This is a scientific test, a recognized test. Is it reliable? Do you believe it. As I say, it is for you to say whether it is or is not."

Exceptions were taken to several parts of the charge, including the second of the quoted paragraphs, but it seems unnecessary to consider anything more than the exception which challenges the refusal to give the following instructions:

"1.  The respondent does not claim that the officers lied; he does claim that they are mistaken. The latter claim is far different than the former. To find the respondent not guilty does not require you to find that the officers lied.

2.  If upon all the testimony, including the test, you are satisfied that a reasonable doubt exists as to the respondent's guilt, then you should find the respondent not guilty.

3. The blood test is not conclusive. You should consider all the testimony and if there is a reasonable doubt, then the respondent should be found not guilty."

There can be no doubt about the propriety of the refusal to give the first of them. It is well established that a court, after instructing a jury, is not bound to repeat, at request, anything which was "substantially and properly covered" in the charge given, *State* v. *Cox*, 138 Me. 151, 23 A. (2nd) 634. See also *State* v. *Pike*, 65 Me. 111, and *State* v. *Mc-Krackern*, 141 Me. 194, 41 A. (2nd) 817. He is under no obligation to adopt language suggested by counsel. *State* v. *Knight*, 43 Me. 11; *State* v. *Williams*, 76 Me. 480. The instructions given advised the jurors they were to pass upon the capacity of the officers to observe what they said they did, as well as their credibility. The word "mistaken," which is the control word of the request, was actually used in the charge.

Under ordinary circumstances the charge given the jury in this case might be considered as having covered "substantially and properly" what we must assume was sought in the second and third requests — consideration of "all the testimony." The jurors were advised that *prima facie* evidence was not "conclusive," to use the controlling word of the third request. Much emphasis was laid upon "reasonable doubt," which is the principal subject matter of both. In the brief presented on behalf of the State, however, the issue is squarely raised that the two instructions, if given, would have completely negatived "the provisions of the blood test statute." This suggests that counsel for the State construed the instructions given, particularly those carried in the quoted paragraphs, as they were construed by counsel for the respondent, and it cannot be doubted that there is a possibility that the jury might have interpreted what was said as requiring that evidence showing the presence of 21/100% of alcohol, by weight, in the blood of the

respondent be given more than *prima facie* effect. The words, referring to 21/100%:

> "which, as I figure it, is at least 6/100% more than the 15/100% which the law says shall be prima facie evidence",

taken with the later declarations that the test was scientific, and recognized, and that the questions to be resolved were "Is it reliable?" and "Do you believe it," might be interpreted as requiring a conviction if the jurors did think it reliable and did believe it, despite the possibility of reasonable doubt on the basis of "all the testimony." As was said in the early case of *State* v. *Merrick, supra,* the instructions, so construed:

> "required a conviction, although every one of the jury might entertain reasonable doubts of * guilt."

It might well be doubted, on the record, if the defendant could have been prejudiced by the refusal of the instructions requested, or by those given in the charge, but to overrule the exception to the refusal of the second and third requested instructions on that ground would be either to usurp the function of the jury, in determining the fact, or to give the statutory provision an effect more controlling than the statute warrants.

*Exceptions sustained.*