STATE of Maine

v.

Gene THIBODEAU.

Supreme Judicial Court of Maine.

March 15, 1976.

Thomas E. Delahanty, II, County Atty., Herbert Bunker, Jr., Asst. County Atty., Auburn, Paul R. Gosselin, Legal Intern, for plaintiff.

Isaacson & Isaacson, by Robert S. Hark, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

In the late evening of February 25, 1974 the defendant, Gene Thibodeau, met a male juvenile at a club on lower Lisbon Street, in Lewiston. The pair conversed at length and in the course of their conversation the idea of burglarizing a building in the Lewiston area was explored. After considering a number of targets which could possibly serve their nocturnal excursion, the pair settled upon the Marcotte Mobile Homes (a division of Marcotte Chevrolet, Inc.), with the understanding that the juvenile would be the one to carry out the burglary, while the defendant would provide the transportation to the scene and away therefrom once their purpose had been achieved.

In execution of their plan of action, so the jury could find from the evidence, the defendant drove south on Lisbon Road and, upon reaching the vicinity of the Marcotte Mobile Homes, he stopped the vehicle and his young companion left the car to accomplish his mission. Thibodeau then continued on in a southerly direction toward Lisbon.

The young lad testified that he walked one hundred feet or so to the small office building which occupied a portion of the lot, broke into the building and while inside took a lighter, a calculator and a coffee pot. When he emerged from the office, the Thibodeau car had returned heading in a northerly direction. The boy re-entered the vehicle carrying with him the items taken from the Marcotte Mobile Homes building and the two drove off toward Lewiston.

At trial, Officer Roger Plourde of the Lewiston Police Department testified that at approximately 2:00 a. m. on February 26, while patrolling upper Lisbon Street, he observed a dark blue car with two occupants heading south toward Lisbon. At about 3:15 a. m. he saw the same car headed in the opposite direction and decided to stop it to "check it out." The officer identified the driver of the subject vehicle as the defendant Thibodeau. He further testified that while he was detaining the car and its occupants he observed a calculator and what appeared to be a "tea pot" in the back seat of the automobile.

The evidence discloses that, sometime after the break and the stopping of the car by Officer Plourde, the defendant and his adolescent friend went to the apartment of one Hazel Demambro. She testified that the two individuals brought with them a calculator and a coffee pot. She further stated that Thibodeau left the coffee pot with her and said he would return to pick it up later.

The testimony of Officer Plourde indicates that in the course of the investigation of the break at Marcotte Mobile Homes he had occasion to go to the apartment of Hazel Demambro where he recovered a coffee pot which he testified was the same one he

had seen in the back seat of Thibodeau's car.

The defendant was charged by indictment with the crime of breaking, entering and larceny in the nighttime in violation of 17 M.R.S.A. § 2103.[1] Upon trial by a jury in the Superior Court, Androscoggin County, he was found guilty and sentenced to a term in Maine State Prison.

In his appeal from the judgment of conviction, Thibodeau raises several points touching upon (1) the sufficiency of the indictment; (2) the admission of an exhibit into evidence; (3) the sufficiency of the evidence as it relates to the charge specified in the indictment; and (4) the correctness of the presiding Justice's instructions to the jury on the issue of "constructive presence."

We deny the appeal.

*I.  Sufficiency of the Indictment*

Thibodeau's first claim of error is that the indictment is fatally defective for not stating that the items removed from the office of Marcotte Mobile Homes were taken with intent permanently to deprive the owner thereof.[2] Such omission, so he says, results in a failure of the indictment to allege an offense against the State.

■ It is well settled that an intent to deprive permanently the owner of his property is an essential element of the crime of larceny and, of course, of the crime of breaking and entering within the provisions of 17 M.R.S.A. § 2103, since the commission of larceny in the building broken into and entered is a necessary ingredient of the criminal activity condemned by the statute. This is so, even though neither the statute defining larceny, 17 M.R.S.A. § 2101, nor the reference statute prohibiting breaking and entering, expressly mentions any specific intent. *State v. McKeough,* 1973, Me., 300 A.2d 755, 757.

In *McKeough,* we held as error the omission in a robbery case to instruct the jury that the accused had to harbor the specific intent to deprive the owner permanently of the subject property taken as a prerequisite to conviction, yet we concluded, on the facts present in the case and in the context of the error not having been saved at trial, that the failure to instruct fully thereon did not result in serious prejudice to the defendant and did not amount to manifest and reversible error.

In *State v. Gordon,* 1974, Me., 321 A.2d 352, 357, this Court re-affirmed the *McKeough* concept that "the specific intent requisite for 'robbery' is defined solely in terms of the injury projected to the interests of the property owner:—*specific intent 'to deprive permanently the owner of his property.'*" (Emphasis supplied).

In *Gordon,* we clarified what the specific intent to deprive permanently the owner of his property meant in the context of a constituent element of the crimes of robbery and larceny. Disagreeing with *State v.*

---

1. 17 M.R.S.A. § 2103, in pertinent part, provides as follows:

"Whoever . . . . breaks and enters any office, bank, shop, store, warehouse, barn, stable, house trailer, mobile home, inhabitable camp trailer, vessel, trailer or semitrailer as defined in Title 29, railroad car of any kind, courthouse, jail, meeting house, college, academy or other building for public use or in which valuable things are kept, and commits larceny therein, shall be punished by imprisonment for not more than 15 years; and when the offense is committed in the daytime, by a fine of not more than $1,000 or by imprisonment for not more than 6 years."

2. The instant indictment is worded as follows:

"On or about the 26th day of February, 1974, at Lewiston, County of Androscoggin, and State of Maine, the above named defendant(s) Gene Thibodeau did break and enter, in the nighttime of said day, the office of Marcotte Chevrolet, Inc., a corporation, and therein did, steal, take and carry away one (1) West Bend coffee pot and two (2) Brothers Pro-Cal 408 calculator of the aggregate value of one-hundred twenty-five (125.00) dollars, the property of Marcotte Chevrolet, Inc."

*Greenlaw,* 1963, 159 Me. 141, 189 A.2d 370, we expanded the "permanent deprivation" concept and stated that

"to negate, as a matter of law, the existence of specific intent to deprive permanently the owner of his property, a wrongful taker of the property of another must have in mind not only that his retention of possession, or control, will be 'temporary' but also that when he will relinquish the possession, or control, he will do it in some manner (whatever, particularly, it will be) he regards as having affirmative tendency toward getting the property returned to its owner. In the absence of such thinking by the defendant, his state of mind is fairly characterized as *indifference* should the owner *never* recover his property; and such indifference by a wrongdoer who is the moving force separating an owner from his property is appropriately regarded as his 'willingness' that the owner *never* regain his property. In this sense, the wrongdoer may appropriately be held to entertain specific intent that the deprivation to the owner be permanent." (Emphasis in original).

■ Jury instructions in compliance with the *Gordon* principles, if not given, would be error under *McKeough,* because a specific intent to deprive the owner of his property is an essential element of the crimes of robbery and larceny.

We must not lose sight of the fact that the present issue is raised, not in the context of instructions to the jury as in *McKeough,* supra, but in relation to the allegations of the charge as contained in the indictment.

In *Martin v. State,* 1969, Me., 249 A.2d 871, where this very issue presently raised by the defendant was before the Court, the allegation of the intent to deprive the owner of his property permanently was viewed as unnecessary and surplusage, since the information carried the terminology "did steal, take and carry away."

Because *McKeough* has re-affirmed the legal reality that an intent to deprive permanently the owner of his property is an essential element of the crime of larceny, a necessary component of the compounded crime of breaking, entering and larceny, and because in *Martin* it would appear that some reliance was placed on the quoted statement from Wharton's Criminal Law and Procedure (Anderson), to the effect that

"It is not necessary, in charging a statutory offense, to allege criminal intent * * * *when the statute does not make them* [sic] *essential ingredients of the offense denounced,"* (Emphasis ours)

we will reconsider the issue as requested by the defendant.

In *Logan v. State,* 1970, Me., 263 A.2d 266, at 268, we stated that

"[t]o satisfy the demands of our State and Federal constitutional provisions [Constitution of Maine, Article I § 6; the Sixth–Fourteenth Amendments to the Constitution of the United States] and of our Rule 7(c) of the Maine Rules of Criminal Procedure, the indictment must contain such plain, concise and definite allegations of the essential facts constituting the intended offense as shall adequately apprise an accused of reasonable and normal intelligence of the criminal act charged and the nature thereof, sufficiently enabling him to defend and, upon conviction or acquittal, to make use of the judgment as a basis of a plea of former jeopardy, should the occasion arise."

Such test had been given prominent support in *State v. Charette,* 1963, 159 Me. 124, 127, 188 A.2d 898, 900 and was restated in *State v. O'Clair,* 1972, Me., 292 A.2d 186, 190 and in *State v. Thibodeau,* 1974, Me., 317 A.2d 172, 180, 181.

■ The instant indictment charges the defendant with the nighttime breaking and entering of the office of Marcotte Chevrolet, Inc. and that he "therein did, steal, take

and carry away one (1) West Bend coffee pot and two (2) Brothers Pro-Cal 408 calculator of the aggregate value of one-hundred twenty-five (125.00) dollars, the property of Marcotte Chevrolet, Inc." This charge upon which Thibodeau was indicted is couched in such clear language respecting both the nature of the accusation and the identity of the particular statutory prohibition involved as to enable him, as well as any other person of reasonable and normal intelligence, to perceive readily and accurately the offense against which he must prepare his defense, and at the same time provide adequate protection against any subsequent prosecution for the same offense.

◼ We agree, as contended by the defendant, that the State must allege in an indictment every essential element of the crime to be charged; the indictment must set out facts which constitute the necessary ingredients of the offense. If any indictment is insufficient in this respect, it is void and the court lacks jurisdiction to proceed with the prosecution, arrive at a valid conviction or impose a lawful sentence thereunder. *State v. Davenport,* 1974, Me., 326 A.2d 1, 9. See *State v. Thibodeau,* 1974, Me., 317 A.2d 172, 179; *Toussaint v. State,* 1970, Me., 262 A.2d 123, 125; *Berger v. State of Maine,* 1951, 147 Me. 111, 112, 83 A.2d 571, 572.

In *Ellis v. State,* 1971, Me., 276 A.2d 438, this Court reaffirmed the rule adopted in *Logan v. State,* 1970, Me., 263 A.2d 266, to the effect that "the necessary elements of the crime could be charged in the indictment either by positive factual allegations or by *necessary* intendment, arising from the words used." (Emphasis in original). We recognized that this rule was more flexible than the strict common law rule of positiveness of allegation.

"[A]ll that is required is that an accused be informed in the indictment with that reasonable degree of fullness which would enable him to meet the exact charge against him.

"If the allegations, we said, in their totality, supplied all the necessary averments, *either positively or by necessary implication,* a defendant could not be misled and the identity of the offense charged would be clear." (Emphasis in original). *Ellis,* Id. at 439, 440.

◼ Furthermore, the general rule in criminal pleadings has always been that, in prosecutions for statutory offenses, ordinarily it is sufficient for the indictment or information to describe the offense in the words of the statute or *in equivalent language* within the meaning of the statutory wording. *State v. Chick,* 1970, Me., 263 A. 2d 71, 74. It is only when the statute does not sufficiently set out the facts constituting the crime that a more definite statement of facts is necessary. *State v. Michaud,* 1955, 150 Me. 479, 482, 114 A.2d 352, 354. See *State v. Munsey,* 1916, 114 Me. 408, 410, 96 A. 729.

In *Moody, Petr. v. Warden, Me. State Prison,* 1950, 145 Me. 328, 75 A.2d 795, this Court ruled that an indictment charging an assault upon a female child under the age of fourteen years, and said child "then and there feloniously, and unlawfully, *did attempt to carnally know and abuse"* sufficiently described the crime of assault with intent to commit rape, since

"an allegation that one made an assault and attempted to commit an offense is the equivalent of an allegation that he made the assault with the intent to commit such offense."

The criminal activity proscribed by 17 M.R.S.A. § 2103 in the language of the statute is the breaking and entering of an office and the commission of *larceny* therein. The indictment, in charging the larceny, simply states that the defendant "therein did, steal, take and carry away" certain property of Marcotte Chevrolet, Inc., without expressly alleging the specific intent to deprive the owner thereof permanently. If the expression "did steal, take and carry away" includes, and is equivalent to, the

statutory concept of a larceny and inherently involves a specific intent to deprive the owner permanently, then the indictment sufficiently sets forth the required intent which is an essential element of the crime.

Certain terms have such accepted meanings in law that, for purposes of a criminal charge, further explanatory allegations are unnecessary.

■ As stated in Wharton's Criminal Law and Procedure (Anderson), Vol. 4, § 1794, page 619:

"In the determination of whether the offense is fully stated, the entire indictment . . . is to be considered, the statutory words are to be taken according to their natural import and terms which have a universally recognized legal significance are to be regarded in that significance, in the absence of anything to indicate a contrary rule."

■ Such a term is the word "assault," which in and of itself implies all the common law and statutory descriptive modes of the act within the concept, which need not be set out in an indictment. *State v. Creighton,* 1904, 98 Me. 424, 57 A. 592.

■ The expression "steal, take and carry away," as the word "steal" alone, signifies a criminal taking and imports the common law offense of larceny. The intent to deprive the owner permanently of the property stolen inheres in the word "steal" and in the expression "steal, take and carry away," and when such terms are used in a criminal accusation, it is not necessary to further charge therein the intent to deprive the owner permanently of his property. *State v. Miles,* 1967, Mo., 412 S.W.2d 473. See also, *State v. Healy,* 1950, Ohio App., 95 N.E.2d 244; *Satterfield v. Commonwealth,* 1906, 105 Va. 867, 52 S.E. 979; *State v. Neddo,* 1898, 92 Me. 71, 75, 42 A. 253.

While the jury, in a prosecution for breaking, entering and larceny, must be instructed respecting the specific intent to de-

prive the owner permanently of his property, in compliance with *McKeough* and *Gordon,* supra, since such intent is an essential element of the crime of larceny involved in this conjoined statutory offense, such allegation " 'with intent to permanently deprive' the owner of his property," even though subject to proof beyond a reasonable doubt, is surplusage in an indictment or information worded in terms of "did steal, take and carry away." *Martin v. State,* supra; See also *State v. Mihill,* 1973, Me., 299 A.2d 557.

■ Furthermore, the present indictment is in accord with Form 11, as amended, of the Appendix of Forms (Maine Practice, Vol. 3, Rules of Criminal Procedure Annotated, Glassman, at page 162). Rule 58, M.R.Crim.P. provides:

"The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate."

An indictment drawn in accordance with Form 11 is sufficient to withstand constitutional attack. See *Ellis v. State,* 1971, Me., 277 A.2d 120.

## II. State's Exhibit—the Coffee Pot

The defendant contends that the coffee pot was improperly admitted as a State's exhibit. Even though several individuals claiming personal knowledge of the exhibit identified the same, Thibodeau, nonetheless, asserts that the "chain of custody" or "continuity of possession" from the time the pot was recovered until it was introduced in evidence at trial was so unreliable as to bar any attempted identification at trial and to make any such evidence, if given, worthless. We disagree.

In *State v. Cress,* 1975, Me., 344 A.2d 57, we quoted with approval the following language from *State v. Lemon,* 1973, Mo.App., 504 S.W.2d 676, 684:

"The purpose of the chain of custody and possession rule is, of course, to vouch-

safe assurance that the exhibit has not been altered or tampered with and that there has been no substitution. * * *. To meet this burden, the state is not required to exclude every possibility of these occurrences, * * * nor to show that some credible witness retained the exhibit in his personal possession or under constant watch, * * *. *Evidence which provides a reasonable assurance that the exhibit is the same and in the same condition meets the test, * * *."* (Emphasis in original).

We recognize that the custody of an exhibit readily identifiable by distinguishing features or hardly subject to change does not require the safeguards necessary to preserve the integrity of real evidence of a fungible or volatile nature which may be easily destroyed by natural or other forces. It is obvious that the same protective measures need not be taken to preserve the evidentiary probative value of such an exhibit as a coffee pot as should surround the chain of custody of a bag of narcotics.

But, in any event, the law does not require that the chain of custody be so cast as to eliminate all possibility of tampering with the exhibit involved. For admission purposes, it suffices if the custodial evidence establishes by the fair preponderance of the evidence rule that it is more probable than not that the object is the one connected with the case. *State v. Dotson,* 1972, 260 La. 471, 256 So.2d 594.

In the words of Justice, later Chief Justice, Traynor:

"The burden on the party offering the evidence is to show to the satisfaction of the trial court that, taking all the circumstances into account including the ease or difficulty with which the particular evidence could have been altered, it is reasonably certain that there was no alteration. The requirement of reasonable certainty is not met when some *vital link* in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received. Left to such speculation the court must exclude the evidence. Conversely, *when it is the barest speculation that there was tampering, it is proper to admit the evidence and let what doubt remains go to its weight."* *People v. Riser,* 1956, 47 Cal.2d 566, 305 P.2d 1, 10 (citations omitted, emphasis added).

The chain of custody rule, thus, may serve a dual purpose. It is an aid to the court in determining the admissibility of the evidence and it may also act as an aid to the finder of facts in determining what weight is to be given the evidence once admitted.

The disputed exhibit, the coffee pot, was in police custody from the time it was taken from the Demambro apartment to the time it was produced in court at trial. There is no express account, however, on a day to day basis, of its presence while it was being kept in the evidence room at police headquarters. Neither is there any suggestion that the pot was altered in anyway.

We believe that, based upon the evidence before him, the presiding Justice could conclude there was no material break in the chain of custody. All indications point to continuous police possession of the disputed exhibit. There is not an iota of evidence that the handling of the exhibit by the Lewiston Police, a responsible agency of government, was less than was warranted, given the physical nature of the object and the circumstances of the case. See *State v. Lafferty,* 1973, Me., 309 A.2d 647, 658; *State v. Carvelle,* 1972, Me., 290 A.2d 190, 192.

Even assuming that the chain of custody here presented was insufficient *of itself* to guaranty the reliability of the exhibit, there was ample evidence, independent of the chain of custody, from which the presiding Justice could conclude that the

coffee pot had been satisfactorily identified as the one relevant to the case.

Raymond Cloutier, the manager of Marcotte Mobile Homes, testified that the pot introduced at trial was the one taken from the company's office. He stated that he could identify the pot because of a "big stain" on its side which he had been unable to remove. The pot was also identified by Hazel Demambro as the one brought to her apartment by the defendant and his young companion. In his testimony Officer Plourde further authenticated the pot by pointing out markings which he had placed upon it after taking it from the Demambro lodgings. He stated that he had not put similar markings on any other such pot. It suffices to say, therefore, that, by identifying markings and description independent of the chain of custody and based on the personal knowledge of individuals in a position to know, the pot was shown to be the one taken from Marcotte Mobile Homes and later recovered at the Demambro apartment. See *State v. Mosher,* 1970, Me., 270 A.2d 451, 453.

It is enough if the object offered in evidence has been reasonably identified, as that sought to be proved, by someone who can testify from his own knowledge that the object offered is the one claimed to have been stolen and to have been in the possession of the defendant. The admission of the coffee pot in evidence did not constitute error.

### III. Constructive Presence

Thibodeau finally contends that there was insufficient evidence presented to the jury to justify his conviction as a "principal." While the evidence tends to show that the defendant helped to formulate the plans for the burglary, agreed to provide transportation to and from the premises involved and did in fact drive to Marcotte Mobile Homes and return to pick up his accomplice after the break, he contends that, in the absence of evidence indicating where he was and what his activities were during the actual perpetration of the crime, he cannot be con-

victed as a principal offender. As a corollary to this contention, which goes to the evidence presented at trial, the defendant also suggests that the presiding Justice erred in failing to instruct the jury in accordance with his requested instructions on the issue of "constructive presence." The requested instruction in pertinent part read as follows:

"To be constructively present he must have been of sufficient proximity to have been of some aid to the principal perpetrator in the actual commission of the felony."

In connection with the defendant's argument that it was error for the Justice below not to charge as requested on the issue of "constructive presence," we note that the record indicates the filing by the defendant of requested instructions dated March 19, 1974, the day before the trial. The docket entries are silent respecting any action thereon by the trial Justice or whether they were called to his attention at any time during trial. The presiding Justice did in fact instruct the jury

"that one who watches at a proper distance and station to prevent a surprise, or if need be to favor the escape of those immediately engaged, may properly be considered as constructively present".

"What was the Defendant doing during that middle portion when George . . . was in the office doing whatever it was he was doing? Wherever or whatever the Defendant was doing, was that sufficient to include him as still participating, or sufficient to say that he broke off from participation."

Without reference to his previously filed requested instruction, the defendant's counsel asked the trial Justice to clarify his charge in relation to the "breaking off point." In compliance with this specific request, the Justice instructed the jury as follows:

"We talked about did the Defendant break off. I was talking in terms of

continuity rather than conspiracy or any other aspect. But the departure, was that a breaking off in the continuity of what was happening sufficient to extracate (sic) him from the constructive presence concept."

To the charge as given, the defendant raised no objections.

There was no compliance with the provisions of Rule 30(b), M.R.Crim.P. which provides in pertinent part:

"At the close of the evidence, *or at such earlier time during the trial as the court reasonably directs,* any party may file written requests that the court instruct the jury on the law as set forth in the requests. * * * *The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury,* but the court shall instruct the jury after the arguments are completed. *No party shall assign as error any* portion of the charge or *omission therefrom unless he objects thereto before the jury retires to consider its verdict,* stating distinctly the matter to which he objects and the grounds of his objection. * * * *."* (Emphasis supplied).

The defendant not only failed to object to the omission of the Justice to instruct the jury in accordance with his previously filed written requested instructions, but he tacitly accepted the charge which the presiding Justice modified at the defendant's request upon the very issue of "constructive presence."

■ The fact that a party, as in the instant case, has submitted requests to charge will not in and of itself dispense with his obligation to object to the trial Justice's omission to so charge, as required by Rule 30(b), M.R.Crim.P., especially where the record is silent as to the Justice's knowledge of the filing of the same and in the absence of any ruling thereon. See *Nesta v. Meyer,* 1968, 100 N.J.Super. 434, 242 A.2d 386.

Although the alleged error in instructions in respect to the issue of "constructive presence" was not properly preserved, we have examined the record in relation thereto to ascertain whether manifest error of law occurred. *State v. Boisvert,* 1967, Me., 236 A.2d 419.

*A. Instructions of the presiding Justice*

■ It is, of course, established that the actual perpetrator of an offense is a principal "in the first degree." In addition, one who is present aiding and abetting in the commission of the offense is termed a principal "in the second degree." *State v. Mower,* 1974, Me., 317 A.2d 807, 811 n. 2. It is equally well established that for one to be "present aiding and abetting" his presence need not be actual but may be "constructive." *Commonwealth v. Knapp,* 1830, 9 Pick. (Mass.) 495, 517; *State v. Berube,* 1962, 158 Me. 433, 434, 185 A.2d 900; *State v. Burbank,* 1960, 156 Me. 269, 279, 163 A.2d 639; *State v. Rainey,* 1953, 149 Me. 92, 97, 99 A.2d 78; *State v. Saba,* 1942, 139 Me. 153, 156, 27 A.2d 813.

■ Constructive presence, however, sufficient to classify a person as a principal in the second degree, does not necessarily require such close physical proximity to the scene of the crime as to permit active physical participation in the very criminal activity undertaken by the perpetrator of the crime termed the principal in the first degree.

"Presence is not to be determined by mere contiguity of space. A man who, on a mountain top at a distance of 30 miles, assists a highway robber by a signal, in making an attack, is a principal in the robbery." Wharton's Criminal Law and Procedure (Anderson), Vol. 1 § 107, pp. 232, 233.

■ At common law, constructive presence by a principal in the second degree meant active participation in some phase of the criminal activity *as it was carried out.* This contemporaneous participation in the

context of an ongoing criminal event is what distinguishes the principal from the accessory before the fact.

As we said in *State v. Mower*, 1974, Me., 317 A.2d 807, at 811:

"Something more than mere presence must be proved in order to convict as a principal a person who is not the actual perpetrator of the crime. It is sufficient if such person aided, abetted, assisted, advised or encouraged another in the commission of the crime, or was present for such purpose to the knowledge of the perpetrator. Likewise, any concerted participation in a general felonious plan, together with actual or constructive presence, is sufficient to make a person a principal as to any crime committed in execution of the plan."

If a person's conduct in connection with the perpetration of a crime by another is governed by prearrangement and his participation therein is an active and integral part of an entire plan of execution of the prearranged criminal activity, that person may be charged and convicted as a principal.

It is not necessary to make a person a principal in the second degree that he be in immediate contact with the actual perpetrator, or be so situated at the time as to make him an eye or ear witness. It is enough if he was immediately at hand and was performing his part of the planned unlawful act. *White v. State*, 1950, 154 Tex.Cr.R. 489, 228 S.W.2d 165, 170.

Actual, or constructive, presence at the scene of a crime during its commission for the purpose of assisting the perpetrator in his escape, all by prearrangement, meets the legal requirements necessary to establish participation as a principal offender. *State v. Simpson*, 1971, Me., 276 A.2d 292, 295.

The instructions to the jury on the issue of constructive presence were more favorable to the defendant than the law required. In the context of this record, there was no manifest error.

### B. Sufficiency of the Evidence

The defendant suggests that the evidence presented by the State does not *directly* establish his role in the alleged offense and thus a verdict of guilty could not be supported. We disagree. The jury could have found that the nature of the defendant's activity was such as could have been classified active co-operation in an illegal event. It was not necessary for the State to prove by direct evidence what the defendant's activities were in the short period of time which elapsed between his companion's exit from the car and the youth's emergence from the vandalized building. The defendant contends that, without such direct evidence, a jury verdict of guilt as a principal would be based on surmise. Such argument ignores the convincing nature of the circumstantial facts which surround the burglarious enterprise and point to Thibodeau's role as an active participant in a planned criminal scheme.

What we said in *State v. Jackson*, 1974, Me., 317 A.2d 814, at 816 applies as well in the instant case:

"Proof of the crime itself is clear and unmistakable. The circumstantial evidence in the record, seen in its full perspective, forms a reliable basis upon which the fact finder did properly conclude that Defendant-Appellant acted in concert with the actual perpetrator,

. . . .

"The inference most logically drawn from [the defendant's] actions, before, during and after the burglarious act is that drawn by the trier of the facts— that this Defendant was acting as a 'lookout' and *available to permit a ready departure*." (Emphasis added).

The entry will be

Appeal denied.

DELAHANTY, J., did not sit.

All Justices concurring.