STATE of Maine

v.

Robert DUNN.

Supreme Judicial Court of Maine.

Jan. 26, 1977.

Waldemar G. Buschmann, Asst. Atty. Gen., Augusta, for plaintiff.

Jude & Cox by Robert E. Cox, Newport, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

Defendant was indicted for a violation of 17 M.R.S.A. § 1601 (Cheating by false pretenses), tried before a Piscataquis County jury, convicted, and has appealed. By following the appropriate procedures mandated by the Maine Criminal Rules, appellant has preserved for appellate review the issue of whether there was sufficient evidence to support his conviction.

We deny the appeal.

We have reviewed the record carefully and are satisfied that the State presented believable evidence sufficient to justify the fact finder in concluding beyond a reasonable doubt that the elements of the crime charged, as delineated in *State v. Kerr*, 117 Me. 254, 103 A. 585 (1918), have been met.

In essence, the defendant's sole argument is that there was no evidence from which the jury could conclude that he made any false representation by which any person could be induced to part with something of value. He argues that if false representations were in fact made, they came from the lips of one James Albert.

While it is true that Mr. Albert was the principal actor in inducing a dealer in furniture to deliver furniture, having a value exceeding $4,000.00, on the premise that a certain check then tendered was valid, it is also true that Mr. Dunn could be said to be an active participant in obtaining this delivery. The jury could

---

* Mr. Justice WEATHERBEE sat at argument and participated in consultation but died prior to preparation of opinion.

have determined that he was present, that he knew the representation was being made, that he knew it was false, that he participated in accepting the sale and delivery of this furniture, and was as much a part of initiating the fraudulent scheme as was Mr. Albert.[1] It is very clear that the jury could have concluded that the furniture dealer was induced to sell and deliver the furniture by reason of the false representations made by Mr. Albert and that such representations were relied upon. *Ellis v. State*, 276 A.2d 438, 439 (Me.1971). We have repeatedly held that one need not be the principal actor in the commission of a crime to be a co-principal and criminally responsible therefor. *State v. Bellanceau*, 367 A.2d 1034 (Me.1977); *State v. Simpson*, 276 A.2d 292 (Me.1971).

The language of Chief Justice Dufresne is particularly appropriate in the context of the facts descriptive of the appellant's conduct, namely:

> "If a person's conduct in connection with the perpetration of a crime by another is governed by prearrangement and his participation therein is an active and integral part of an entire plan of execution of the prearranged criminal activity, that person may be charged and convicted as a principal."

*State v. Thibodeau*, 353 A.2d 595, 606 (Me.1976).

The entry is:

Appeal denied.

All Justices concurring.

---

1. In the presence of Dunn, Albert represented that he and Dunn owned and wished to sell two houses in Bradley, Maine; that he had made a $5,000.00 deposit to support his check being tendered as a down payment; that the houses could be better sold if they were furnished. Dunn was present and heard these representations and, with reference to the checks comprising the $5,000.00 deposit, is quoted as saying, "If those checks don't clear, we will break some legs." Dunn further obtained sales tags which he was seen substituting for the original sales tags after the furniture was delivered. Additionally, Dunn personally advanced $500.00 in cash to supplement Albert's $500.00 check, which the furniture dealer demanded as one of the preconditions for delivery of the furniture.

The day following delivery of the furniture it was learned by the vendor that there were no funds on deposit with which to pay the $500.00 check. The two buildings in Bradley were inspected on that day and on a day shortly thereafter and none of the furniture was found in either location. It was further discovered that neither Albert nor Dunn owned the particular houses and neither of them had any authority whatever from the owner to sell them.