STATE of Maine

v.

Gerald LEWIS.

Supreme Judicial Court of Maine.

May 17, 1979.

Henry N. Berry, III, Dist. Atty., William Keefe, (orally), Law Student, Peter Ballou, Deputy Dist. Atty., Portland, for plaintiff.

Wilson, Steinfeld, Murrell, Barton & Lane by Paul Aranson, Portland, (orally), for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

Following a jury trial in the Superior Court (Cumberland County) the Defendant, Gerald Lewis, was found guilty of trafficking in prison contraband, 17–A M.R.S.A. § 757(1)(B).[1] From a judgment of conviction dated November 9, 1978, the Defendant brings this appeal, challenging especially the introduction into evidence, over his objection, of a hypodermic syringe.

We deny the appeal.

The evidence discloses that the Defendant had been given a ninety day sentence in the Cumberland County Jail on an assault charge. While there, he obtained permission to participate in a work release program as a taxi driver. On September 24, 1978, the Defendant returned from that work and was routinely strip-searched at the jail. In the Defendant's boot, Deputy Sheriff Leadbetter discovered a small plasticine sandwich bag which contained a plastic disposable hypodermic syringe.

The Defendant did not deny that a syringe was found in his boot. Rather, his defense was that he did not "intentionally" possess the contraband, as is required by the pertinent statute.[2]

The Defendant testified that while driving the taxi he had placed his boots on the back floor. He asserted that during the evening, someone must have planted the syringe in one of his boots. He did not feel it, he said, when he put the boots on again. Further, the Defendant testified that he picked up two surreptitious men who requested that he drive them around Portland for an hour before precipitously exiting when the police began following the taxi. This account was substantially corroborated by a sixteen-year-old girl friend who had accompanied the Defendant that evening.

The Defendant contends that there was no proper foundation for the introduction of the syringe into evidence. His attack is premised on an alleged failure of the State to establish a chain of custody from the

---

1. In pertinent part 17–A M.R.S.A. § 757 states:
   1. A person is guilty of trafficking in prison contraband if:

   .    .    .    .    .

   B. Being a person in official custody, he intentionally makes, obtains or possesses contraband.
   The contraband which the Defendant allegedly possessed was a hypodermic syringe. See 17–A M.R.S.A. § 1111.

2. We note that in his jury instructions, the presiding justice initially charged that the Defendant could be found guilty if he either "intentionally" or "knowingly" possessed a hypodermic apparatus. In explaining these culpable states of mind, the justice twice defined them with reference to a reasonable man standard. Neither term, however, has such an objective standard; both concern the Defendant's subjective state of mind. As provided in 17–A M.R.S.A. § 10:

   Definitions of culpable states of mind.
   1. "Intentionally."
   A. A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result.

   B. A person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances or believes that they exist.
   2. "Knowingly."

   .    .    .    .    .

   B. A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist.

   .    .    .    .    .

   Following the court's instruction, the Defendant objected on the ground that "knowingly" would not support a conviction under 17–A M.R.S.A. § 757. Thereafter, the presiding justice correctly instructed the jury that it had to find that the Defendant "intentionally" possessed contraband and read the statutory definition, 17–A M.R.S.A. § 10(1)(A). The Defendant was satisfied with this instruction. Read in its entirety, we find the instruction to be substantially correct and not misleading. *State v. Childs*, Me., 388 A.2d 76, 80 (1978); *State v. Barlow*, Me., 387 A.2d 759, 760 (1978). There was no error here.

time it seized the syringe until this exhibit was introduced at trial.

Deputy Sheriff Leadbetter testified that after he discovered the syringe he brought it to Sergeant Hutchinson and handed it to him in the Defendant's presence. Leadbetter said he proceeded to fill out an arrest report and did not observe what Sergeant Hutchinson did with the syringe. About ten minutes later Sergeant Hutchinson reappeared with an evidence bag, presumably containing the syringe, which Leadbetter signed. Between September 24 and the November 8 trial, this evidence bag was used at least once; that was at the Defendant's hearing on revocation of the work release program. This evidence bag was brought to that hearing either by Deputy Sheriff McCallum, who, in fact, brought it to trial or by an assistant jail administrator. There was no evidence presented at trial to establish who in the Cumberland County Sheriff's Department had custody of the evidence bag after it was seized, where it was kept during the interim, or who transferred the bag to Deputy Sheriff McCallum. The latter and Leadbetter were witnesses at trial; Sergeant Hutchinson was not a witness.

■ Before introducing an exhibit a party is required, by adequate foundation, to demonstrate that the object is genuine; that is, the party must show "that the matter in question is what its proponent claims." M.R.Evid. 901(a). One method is to account for the evidence from the time it became relevant to the lawsuit until its introduction at trial; that is, the "chain of custody" method. *State v. Desjardins*, Me., 401 A.2d 165 (May 11, 1979); *State v. Cress*, Me., 344 A.2d 57, 61 (1975); *State v. Lafferty*, Me., 309 A.2d 647, 657 (1973). Under this approach the State should have produced appropriate records or offered the testimony of all individuals who handled the evidence during this interval. *Graham v. State*, 253 Ind. 525, 255 N.E.2d 652 (1970); *Ritter v. State*, 3 .Tenn.Cr.App. 372, 462 S.W.2d 247 (1970).

■ A rigid adherence to these requirements may at one time have been essential.[3] We have, however, countenanced minor breaks in the chain of custody. *State v. Thibodeau*, Me., 353 A.2d 595, 603 (1976); *State v. Cress, supra* at 61. Physical objects may be admitted despite gaps in the evidence regarding custody, *United States v. De Larosa, supra*, so long as the evidence, both direct and circumstantial, establishes a reasonable inference that the identity and condition of the exhibit have remained intact. *State v. Thibodeau, supra*, at 603. Moreover, the trial court's decision will not be overturned except for a clear abuse of discretion. *See State v. Lewis*, Me., 373 A.2d 603, 611–12 (1977).

■ Among the factors that the trial court should consider when the chain of custody is not demonstrated to be complete and exclusive are the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it. *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960); *State v. Thibodeau, supra* (recognizing difference between durable exhibit [coffee pot] and narcotics).

■ Taking all of these factors into account, we conclude that the item should not have been admitted as the precise object that was in the Defendant's boot.[4] We find such error, however, to be harmless.

■ This is not a case where the chain of custody was a necessary predicate for conviction as, for example, it might be where the State seeks to introduce a laboratory finding in a narcotics prosecution. *See Graham v. State, supra*, and cases cited therein.

---

3. *See* Annot. 21 A.L.R.2d 1216 (1952); *United States v. De Larosa*, 450 F.2d 1057, 1068 (3rd Cir. 1971) *cert. denied*, 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 800 (1972). (Rule requiring complete and exclusive proof of chain of custody rejected in favor of trial court's broad discretion on admissibility).

4. A syringe could, of course, have been introduced as a model or example of the type of object that Leadbetter seized from the Defendant without complying with the chain of custody requirements. *See State v. McLain*, Me., 367 A.2d 213, 219 (1976).

There the continuity of custody of the narcotics is extremely critical. Here, by contrast, the State need not have accounted for the hypodermic apparatus at all. Conviction for a possessory crime can be predicated entirely on oral testimony. *State v. Dow*, Me., 392 A.2d 532, 536 (1978); *State v. McLain, supra* at 219; *State v. Creamer*, Me., 359 A.2d 603, 606 (1976). Thus in the case before us, the oral testimony was sufficient.

Moreover, the Defendant conceded that there was discovered in his boot a syringe which was similar in appearance to the one the State introduced into evidence. This testimony, by itself, obviated the need for proof of the chain of custody of the actual syringe removed from his boot.[5]

We have considered the Defendant's remaining points on appeal and conclude that they do not merit discussion.

The entry is:

Appeal denied.

Judgment affirmed.

---

**5.** *See Taylor v. Milton*, 353 Mich. 421, 92 N.W.2d 57 (1958). (In malpractice suit, assuming inadequate foundation, admission into evidence of filiform harmless error where defendant admitted leaving such instrument in plaintiff's bladder.)