JABAR, J.,
dissenting.
[¶ 21] I respectfully dissent because I believe that the post-conviction court erred in concluding that Cookson failed to produce prima facie evidence of a sufficient chain of custody to permit DNA testing. Moreover, I believe that the trial court erred as a matter of law in requiring him to “eliminate all possibility of tampering with the exhibit involved.” State v. Thibodeau, 353 A.2d 595, 603 (Me.1976); see also 15 M.R.S. § 2138(4-A)(B) (2010).[9]
[¶ 22] In affirming the post-conviction court’s denial of Cookson’s petition to conduct DNA testing, the Court defers to the trial court’s conclusion that Cookson failed to meet his burden to produce prima facie evidence of a chain of custody based on two of the court’s findings: (1) “[t]here exists a [two]-year gap of the items before they were turned over to the police and there has been no proof presented that any of the items are in the same condition [as] when the crime occurred or that they have not been tampered with”; and (2) Cookson “presented very little, if any, evidence that the clothes and sneakers have not been substituted, tampered with, replaced[,] or altered in any way.” See 15 M.R.S. § 2138(4-A)(B); Court’s Opinion ¶¶ 17-18. However, with this interpretation of section 2138(4-A)(B), the post-conviction court has required Cookson to prove a negative. In other words, although Vantol informed police that he wore the clothes in question during the homicides, buried them following the murders, and retrieved them to turn over to the police, the court nonetheless required Cookson to prove that the items were not “substituted, tampered with, replaced or altered in any material way,” during the two years that they were buried. 15 M.R.S. § 2138(4 — A)(B). This places an impossible burden on any person seeking DNA analysis, and the Court’s interpretation is an illogical reading of the post-conviction DNA analysis statute.
[¶ 23] Title 15 M.R.S. § 2138(4-A) requires the proponent of DNA testing to present prima facie evidence of the following elements:
A. A sample of the evidence is available for DNA analysis;
B. The evidence to be tested has been subject to a chain of custody sufficient to establish that the evidence has not been substituted, tampered with, replaced or altered in a material way;
*1193 C. The evidence was not previously subjected to DNA analysis ...;
D. The identity of the person as the perpetrator of the crime that resulted in the conviction was at issue during the person’s trial; and
E. The evidence sought to be analyzed ... is material to the issue of whether the person is the perpetrator of, or accomplice to, the crime that resulted in the conviction.
The State and Cookson stipulated that elements A, C, D, and E were established. Therefore, the only element at issue is whether Cookson presented prima facie evidence that “[t]he evidence to be tested has been subject to a chain of custody sufficient to establish that the evidence has not been substituted, tampered with, replaced or altered in a material way.” Id. § 2138(4-A)(B).
A. Prima Facie Evidence
[¶ 24] The prima facie evidence standard “regards the preliminary burden of production of evidence; it requires proof only of ‘enough evidence to allow the fact-trier to infer the fact at issue and rule in the party’s favor.’ ” Cookson v. State (Cookson II), 2011 ME 58, ¶8, 17 A.3d 1208 (quoting Anderson v. Delaware, 831 A.2d 858, 865-66 (Del.2003)). “Prima facie evidence means evidence that, if unrebut-ted or unexplained, is sufficient to maintain the proposition.” Town of Blue Hill v. Leighton, 2011 ME 103, ¶12 n. 5, 30 A.3d 848 (quotation marks omitted); see also State v. Beane, 146 Me. 328, 331, 81 A.2d 924 (1951). Stated differently, prima facie evidence “requires only some evidence on every element of proof necessary to obtain the desired remedy.” Cookson II, 2011 ME 53, ¶ 8, 17 A.3d 1208 (quotation marks omitted).
[¶ 25] Because the statute requires the defendant to produce only prima facie evidence, he meets this burden if he provides “some evidence” on every element necessary to prove chain of custody. Id. Unlike in the context of a trial, in which one party presents prima facie evidence that the opposing party may rebut with other evidence, here, the defendant’s burden ends when he provides evidence “to allow the fact-trier to infer the fact at issue and rule in the party’s favor.” Id. (quotation marks omitted). “Thus, prima facie proof is a low standard that does not depend on the reliability or credibility of the evidence, all of which may be considered at some later time in the process.” Id. (quotation marks omitted). As a result, the post-conviction court’s factual findings are not at issue. Cf. Court’s Opinion ¶ 16.
[¶ 26] Rather, the sole issue presented to us on appeal is whether Cookson has presented sufficient prima facie evidence of the chain of custody. Because the reliability and credibility of the evidence are not at issue, whether Cookson has presented sufficient evidence to meet every element of the chain of custody is ultimately a legal question. See State v. Ntim, 2013 ME 80, ¶ 9, 76 A.3d 370 (“If [a court’s judgment] is based primarily on undisputed facts, it is viewed as a legal conclusion that is reviewed de novo.”). On appeal, Cookson argues that the post-conviction court erred in making a legal determination: interpreting section 2138(4-A)(B) to require that he provide evidence to convince the court that there was an absence of any tampering or alteration during the entire period in question.
B. Chain of Custody
[¶ 27] The requirement that Cookson demonstrate a chain of custody refers to the need to “support a finding that the [item of evidence] in question is what its proponent claims.” Cookson II, 2011 ME 53, ¶ 11, 17 A.3d 1208 (quotation marks *1194 omitted). We have stated that “[t]he purpose of the chain of custody ... rule is, of course, to vouchsafe assurance that the exhibit has not been altered or tampered with and that there has been no substitution.” Thibodeau, 358 A.2d at 602-08. Our cases make clear that the party seeking to introduce evidence “is not required to exclude every possibility of these occurrences, nor to show that some credible witness retained the exhibit in his personal possession or under constant watch.” Id. at 603 (quotation marks and alterations omitted). Similarly, we have never held that for evidence to meet a chain-of-custody requirement and be admissible at trial, the proponent must demonstrate that the evidence was not tampered with or altered at any moment while in the State’s custody. See, e.g., State v. Thompson, 503 A.2d 689, 691 (Me.1986).
[¶ 28] Rather, an item of evidence is admissible at trial if the party seeking to introduce that evidence can demonstrate “by the fair preponderance of the evidence ... that it is more probable than not that the object is the one connected with the case.” Id.; see also Thibodeau, 353 A.2d at 603. “ ‘Evidence which provides a reasonable assurance that the exhibit is the same and in the same condition meets the test.’ ” Thibodeau, 353 A.2d at 603 (quoting State v. Cress, 344 A.2d 57, 61 (Me.1975)).
[¶ 29] Specifically with regard to items that are “readily identifiable by distinguishing features or hardly subject to change,” the party seeking to offer that evidence need not provide evidence of the same “safeguards necessary to preserve the integrity of real evidence of a fungible or volatile nature which may be easily destroyed by natural or other forces.” Id. For example, a physical item with readily identifiable physical characteristics, like a coffee pot, need not be authenticated through the rigorous continuity-of-possession requirements that are necessary to support the admissibility of fungible evidence, like narcotics or money. Id. For this reason, we have stated, “Among the factors that the trial court should consider when the chain of custody is not demonstrated to be complete and exclusive are the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it.” State v. Lewis, 401 A.2d 645, 647 (Me.1979); see also United States v. De Larosa, 450 F.2d 1057, 1068-69 (3d Cir.1971) (holding that because the clothing introduced by the Government matched imprints of that clothing at the crime scene, the Government was not required to prove that clothing was in the same condition when introduced as at the time of the crime).
[¶ 30] Here, the post-conviction court cites two substantial reasons in its decision to support its conclusion that, based on the evidence in the record, Cookson failed to meet his burden with regard to section 2138(4-A)(B).
1. Evidence of an Absence of Tampering
[¶ 31] In its decision, the post-conviction court notes, “[T]here exists a [two]year gap of the items before they were turned over to the police and there has been no proof presented that any of the items are in the same condition when the crime occurred or that they have not been tampered with.” Additionally, the post-conviction court found that Cookson “presented very little, if any, evidence that the clothes and sneakers have not been substituted, tampered with, replaced[,] or altered in any way.” The Court defers to this finding, confirming that “there simply was no testimony from any source at any stage of the proceeding suggesting that Vantol ever said that the clothes remained *1195 where he buried them during the two years between the murders and his confessions.” Court’s Opinion ¶ 17.
[¶ 32] However, this decision erroneously applies our law on chain of custody for two reasons. First, our cases make clear that a chain of custody does not require that the party seeking to introduce the evidence negate every possibility of tampering or that “some credible witness retained the exhibit ... under constant watch.” Thibodeau, 353 A.2d at 603. Unlike in Thibodeau, where the court was admitting evidence in the context of a trial, here Cookson has a lower burden: to produce only prima facie evidence of a chain of custody. See 15 M.R.S. § 2138(4-A)(B).
[¶ 33] Second, the State has stipulated that the clothing “is material to the issue of whether the person is the perpetrator of, or accomplice to, the crime that resulted in the conviction.” See 15 M.R.S. § 2138(4-A)(E). Because of this stipulation, there is no question that the clothing retrieved by Vantol is the clothing that may contain evidence related to the murders. As a result, the court need not determine whether it is “more probable than not that the object is the one connected with the case,” Thompson, 503 A.2d at 691; see also Cookson II, 2011 ME 53, ¶ 11, 17 A.3d 1208.
[¶ 34] Even if the parties had not stipulated that the clothing is material to the identity of the perpetrator, the clothing is readily identifiable and is not fungible— meaning that, unlike drugs or money, it cannot easily be replaced with similar items — and, thus, we do not require the person seeking to introduce this evidence to provide evidence of its continued possession for the entire relevant period. See Lewis, 401 A.2d at 647; Thibodeau, 353 A.2d at 603. Continuity of possession by either Cookson or Vantol is unnecessary and irrelevant pursuant to our case law on chain of custody, and the court erred in requiring Cookson to provide evidence that the clothes were not tampered with or altered from the time of the murders until he gave them to the police. See Thompson, 503 A.2d at 691; Lewis, 401 A.2d at 647; Thibodeau, 353 A.2d at 603; see also De Larosa, 450 F.2d at 1068.
[¶ 35] Vantol told detectives that the clothes he retrieved were the same as those that he wore during the murders and that he buried shortly after committing the homicides. By presenting evidence that the clothes were buried in a rural location in the Maine woods and then dug up later, the fact-finder may certainly infer “that the evidence has not been substituted, tampered -with, replaced or altered in a material way.” See 15 M.R.S. § 2138(4— A)(B). Despite the fact that, here, the statute requires only prima facie evidence — a lower standard than that required in the context of a trial, see Thompson, 503 A.2d at 691 — the Court attempts to heighten the requisite standard for chain of custody in the context of DNA testing. By affirming the decision of the trial court, the Court adopts a standard under which proponents, who at one point possessed items that they wish to submit for DNA analysis, must “eliminate all possibility of tampering with the exhibit involved,” thus demanding a condition that we have never before required. Thibo-deau, 353 A.2d at 603.
2. Changed Condition
[¶ 36] The post-conviction court also found that “clearly [the clothes] were not in the same condition [as] when they were last worn,” and that they were “not in substantially the same condition as when the crime was committed.” The Court again defers to this finding, stating, “[T]he clothing [Vantol] turned over [to police] in 2001 does not even grossly match the *1196 clothing he said he had worn while committing the murders.” Court’s Opinion ¶ 19. However, Vantol admitted that these were the clothes that he was wearing during the homicides. Because prima fa-cie evidence does not depend on the credibility of the evidence, Cookson II, 2011 ME 58, ¶ 8, 17 A.3d 1208, the court must infer that these were the same clothes worn during the homicides. Again, Cook-son does not dispute the court’s finding that the clothing is degraded, but argues that it is irrelevant for determining whether there is prima facie evidence of a chain of custody.
[¶ 37] At this stage, section 2138(4— A)(B) does not require Cookson to show that the evidence on the clothing is not degraded. The testing may demonstrate that the evidence on the clothing had deteriorated to the point that DNA analysis is impossible. However, if the evidence on the clothing has not deteriorated, then testing may be performed to determine whether the clothing contains any DNA from the victims, Vantol, or Cookson. Without the technology for extracting a testable sample from the clothing and absent scientific knowledge about the testing requirements, Cookson is wholly unable to meet this burden. Only the DNA analysis will reveal whether there is any evidence on the clothing that can be tested, and thus, the court’s interpretation of section 2138(4-A)(B) is an unreasonable and illogical construction of the DNA analysis statute. See State v. Aboda, 2010 ME 125, ¶ 10, 8 A.3d 719 (stating that in construing a statute “[w]e seek to ... avoid[ ] results that are absurd, inconsistent, unreasonable, or illogical.” (quotation marks omitted)).
C. Conclusion
[¶ 38] Unless we permit the testing, we will never know whether the evidence is inconclusive, inculpatory or exculpatory. The analysis may confirm that the evidence on the clothing had deteriorated to the point that DNA analysis is impossible. However, if the clothing has not deteriorated, then testing may be performed to determine whether there is DNA from the victims, Vantol, or Cookson. If any of the victims’ DNA is found on any of the clothing, then it is clear that the clothes were connected with the homicide. If testing further reveals that Cookson’s DNA is present on the clothing, Cookson will have an impossible task of convincing a judge that he is entitled to any relief under the statute. On the other hand, if Vantol’s DNA is found on the clothing along with the victims’ DNA, to the exclusion of Cookson’s DNA, then Cookson would have a strong argument to make for relief pursuant to the statute.[10] See generally 15 M.R.S. § 2138(10) (2013).
[¶ 39] DNA analysis has had a dramatic impact on justice in this country. Not only has it vindicated some defendants who have been wrongfully convicted, but it has also been used by law enforcement to reopen old cases and convict defendants of crimes that had previously gone unsolved. See Dist. Attorney’s Office for Third Judi *1197 cial Dist. v. Osborne, 557 U.S. 52, 55, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009) (recognizing the “unparalleled” power of DNA evidence to “exonerate the wrongly convicted and to identify the guilty”). It is incumbent on the state, in its judicial, investigative, and prosecutorial capacities, to use this “unparalleled” evidence where it is available.
[¶ 40] In this case, because the prima facie standard requires only “some evidence” of chain of custody, and the chain of custody for these items does not require the party seeking to introduce the evidence to negate every possibility of tampering, see Thibodeau, 353 A.2d at 603, the court made an error of law in concluding that Cookson did not satisfy the requirements of 15 M.R.S. § 2138(4-A)(B). Therefore, the Court’s decision affirming the denial of DNA testing is contrary to the requirements of the DNA analysis statute, our decision in Cookson II, 2011 ME 53, ¶¶ 8-9, 17 A.3d 1208, and our precedent concerning chain of custody, see Thompson, 503 A.2d at 691; Thibodeau, 353 A.2d at 603. I would vacate the trial court’s decision and remand for further proceedings.

. Although 15 M.R.S. § 2138(4-A)(B) is unchanged as a result of the Legislature's 2011 and 2013 amendments to the post-conviction DNA analysis statute, see Court's Opinion ¶ 1 n.2, I cite to the 2010 version in order to clarify that I am referring to the same version of section 2138 to which the Court refers. Court’s Opinion ¶ 1.

. Among the evidence in the record that might support Cookson’s argument for relief is the following: (1) Cookson's conviction was based on circumstantial evidence; (2) Vantol confessed to the murders on at least five separate occasions; (3) despite having the developmental capacity of a twelve-year-old, Van-tol recounted intricate details of the murders and the scene of the crime; (4) Vantol provided the police with a gun that later proved to be a ballistics match to the murder weapon, although during Cookson’s trial the State provided evidence of a different weapon that it alleged Cookson had used; and (5) the mother of Vantol's child testified that the clothing was similar to the type of clothing worn by Vantol around the time of the murders.